**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| AMBASSADORS INTERNATIONAL, INC., <u>et</u> <u>al.</u>,[1] | Case No. 11-_____ (___) |
| Debtors. | Joint Administration Requested |

**MOTION OF THE DEBTORS FOR AN ORDER (I) APPROVING
CASH MANAGEMENT SYSTEM, (II) AUTHORIZING USE OF
PREPETITION BANK ACCOUNTS AND BUSINESS FORMS,
(III) WAIVING THE REQUIREMENTS OF 11 U.S.C. § 345(b) ON AN
INTERIM BASIS, AND (IV) GRANTING ADMINISTRATIVE
EXPENSE STATUS TO POSTPETITION INTERCOMPANY TRANSACTIONS**

The debtors and debtors-in-possession in the above-captioned chapter 11 cases (each a "<u>Debtor</u>" and collectively, the "<u>Debtors</u>"), by and through their undersigned counsel, hereby move this Court (the "<u>Motion</u>") for entry of an order (i) authorizing and approving the Debtors' continued use of their existing cash management system, (ii) authorizing the Debtors to continue using their prepetition bank accounts and business forms, (iii) waiving the requirements of 11 U.S.C. § 345(b) on an interim basis with respect to the Debtors' deposit practices, and (iv) granting administrative expense status to postpetition intercompany claims between and among the Debtors. The facts and circumstances supporting this Motion are set forth in the concurrently filed Declaration of Mark Detillion, Chief Financial Officer of Ambassadors International, Inc., in Support of First Day Motions (the "<u>Detillion Declaration</u>"). In further support of the Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Ambassadors International, Inc. (8605); Ambassadors Cruise Group, LLC (2448); Ambassadors, LLC (0860); EN Boat LLC (8982); AQ Boat, LLC (5018); MQ Boat, LLC (5095); DQ Boat, LLC (5064); QW Boat Company LLC (0658); Contessa Boat, LLC (9452); CQ Boat, LLC (9511); American West Steamboat Company LLC (0656); and Ambassadors International Cruise Group (USA), LLC (7304). The mailing address for each Debtor is 2101 4th Avenue, Suite 210, Seattle, WA 98121.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief sought herein are sections 105(a) and 345 of the Bankruptcy Code.

## BACKGROUND

4.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  The Debtors are continuing in the possession of their assets and the management of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  The Debtors have requested that these Chapter 11 Cases be consolidated for procedural purposes.   As of the date hereof, no official committee of unsecured creditors has been appointed.

5.      A description of the Debtors' business operations, capital structure, the events leading up to the commencement of the Chapter 11 Cases and the facts and circumstances supporting the relief requested herein is set forth in the Detillion Declaration filed contemporaneously herewith and which is incorporated herein by reference.

**A.      The Debtors' Cash Management System**

6.      In the ordinary course of their businesses, the Debtors maintain a centralized cash management and disbursement system to collect funds for their operations and to pay operating and administrative expenses in connection therewith (the "Cash Management System").  The Cash Management System is similar to those utilized by other large, diversified companies to collect, concentrate, and disburse funds in a cost-effective and efficient manner.

7.      The Cash Management System is carefully managed through oversight procedures implemented by the Debtors' financial personnel.  Through their control over the Cash Management System, the Debtors are able to facilitate cash forecasting and reporting, monitor collection and disbursement of funds, and maintain control over the administration of various bank accounts required to effect the collection, disbursement, and movement of cash.

8.      A diagram outlining the structure of the Cash Management System is attached as Exhibit A hereto and a list of the bank accounts that are part of the Cash Management System (collectively, the "Bank Accounts") is attached as Exhibit B hereto.  As illustrated in the Exhibits attached hereto and as discussed in greater detail below, the Cash Management System currently consists of eight (8) bank accounts, each of which is maintained with Bank of America. The Debtors maintain a primary depository and disbursement account (the "Operating Account"), which is located in Seattle, Washington and owned by Ambassadors International Cruise Group (USA), LLC ("Ambassadors Cruise Group USA").  As set forth below, the majority of the Debtors' deposits and payments are made to and from the Operating Account.[2]

9.      The Operating Account is the primary account for the Debtors' Windstar cruise business, which is the largest source of revenue for the Cash Management System.  The Windstar cruise business is primarily funded by payments from customers, who typically pay the Debtors by credit card or check when they book a cruise, book an excursion or spend money on board the cruise ships.  Substantially all of checks and electronic payments (including credit card receipts) from customers are deposited directly into the Operating Account.

10.     Similarly, the Debtors' payment obligations are generally funded directly or indirectly through the Operating Account.  For payments directly related to the Windstar

---

[2]      The Operating Account is subject to a deposit account control agreement in favor of the Debtors' prepetition secured lenders.

cruise business (including payables owed by the Debtors' non-debtor foreign subsidiaries), the Debtors make such payments directly from the Operating Account. As a general matter, Ambassadors Cruise Group USA acts as a paying agent for the Debtors' non-debtor subsidiaries, and makes payments on account of those subsidiaries in the ordinary course. Such payments include food and fuel for the cruise ships, crewmembers' compensation, and other cruise-related payables. The majority of the Debtors' payments from the Operating Account are check or wire transfer. Every week, however, Airlines Reporting Corporation ("ARC"), a travel technology firm, ACH debits approximately $50,000 from the Operating Account on account of and air ticketing for both crew and customer travel.

11. In addition to the Operating Account, the Debtors maintain a depository for deposits unrelated to the Windstar cruise business (the "Ambassadors/Majestic Depository Account"), and four (4) disbursement accounts for payroll, employee flexible spending, and payables related to the Majestic line or Ambassador's International (the "Disbursement Accounts"). The Disbursement Accounts are funded as needed from the Operating Account and disbursements are typically made shortly thereafter. The Ambassadors/Majestic Depository Account and the Disbursement Accounts are described more fully below. In addition, the Majestic Disbursement Account periodically receives wire deposits from insurance proceeds.

12. The Debtors' accounts are not electronically linked and transfers between accounts are made manually by the Debtors' personnel. The Debtors do not maintain any zero balance accounts and although the Debtors typically concentrate cash in the Operating Account, there are no nightly cash sweeps.

13. Although the majority of the Debtors' payments are made from the Operating Account, certain payables are made from the Disbursement Accounts for particular

purposes.    One such purpose is payroll.    The Debtors use Automatic Data Processing, Inc. ("ADP"), a third-party processor, to make their payroll.    Instead of having ADP take funds directly from the Operating Account, the Debtors fund from the Operating Account an account at Bank of America (the "Payroll Account") prior to a scheduled pay date with the amounts needed for payroll.   ADP then debits the Payroll Account on the 3rd and 18th of every month (or if these days fall on a weekend, the Friday before) and pays the Debtors' employees, and remits any related taxes to the appropriate taxing authorities two business days later.

14.       Additionally, some of the Debtors' employees participate in a flexible spending program, whereby the Debtors withhold funds from employees' paycheck and turn the funds over to a plan administrator.   Again, instead of having the plan administrator take funds directly from the Operating Account, the Debtors fund from the Operating Account an account at Bank of America (the "FSA Account") with the amounts needed for the flexible spending program.   Then the Debtors' flexible spending account plan administrator debits the FSA Account to reimburse the Debtors' employees for eligible expenses.

15.       Further, the Debtors occasionally need to make payments unrelated to the Windstar cruise business.   In such instances, the Debtors will fund, on an as needed basis from the Operating Account , one of two bank accounts at Bank of America for payables related to either (i) the Debtors' domestic non-operating cruise business, Majestic (the "Majestic Disbursement Account"), or (ii) the Debtors' ultimate parent, Ambassadors International, Inc. (the "Ambassadors Disbursement Account").    Payments from the Majestic Disbursement Account primarily include moorage, maintenance and insurance payments, while payments from the Ambassadors Disbursement Account include professional fees and other corporate level payments.

16.      Occasionally, the Debtors will receive funds from other sources unrelated to the Windstar cruise business and not deposited directly into the Operating Account.  In such instances, those funds will typically be deposited into the Ambassadors/Majestic Depository Account or the Majestic Disbursement Account.  To the extent any deposits are made into the Ambassadors/Majestic Depository Account or the Majestic Disbursement Account, such funds are typically on account of consolidated tax refunds, insurance proceeds, or other receivables related to the Majestic domestic cruise business.  As the majestic cruise business is no longer operational, deposits into the Ambassadors/Majestic Depository Account are rare.  Following the receipt of such funds, the Debtors will typically transfer any such funds to the Operating Account.

17.      Additionally, the Debtors accept American Express, Visa and MasterCard, credit and debit cards on board the cruise ships and on-line through their websites.  The Debtors have entered into arrangements with various credit card companies (the "Credit Card Processors") to process and settle these credit card transactions.  Once processing and settlement has been completed  (typically a 2-3-day process), the Credit Card Processors remit the cash proceeds of the credit or debit card transactions to the Debtors by transferring any such funds to the Operating Account.  The Credit Card Processors also hold certain funds back in holdback accounts on account of potential chargebacks from customers as well as a pre-negotiated percentage based on the dollar value of future cruises.

18.      Finally, the Debtors maintain two certificates of deposit (the "CD Accounts") as security for certain obligations.  The CD Accounts are each maintained at Bank of America.  One CD Account contains approximately $70,182  and is held to secure a line of credit for an air ticketing program in which the Debtors participate with ARC.  As of the Petition Date,

the letter of credit was undrawn. The other CD Account contains approximately $500,000 and is held as collateral to secure the account control agreement on the Operating Account. The funds in the CD Accounts are included in the Debtors' books as restricted cash.

## RELIEF REQUESTED

19.     By this Motion, the Debtors seek entry of an order (a) authorizing the continued use of their existing Cash Management System, (b) authorizing the continued use of their existing bank accounts and business forms, (c) authorizing their deposit practices and waiving the requirements of section 345(b) of the Bankruptcy Code in connection therewith on an interim basis, and (d) granting administrative priority status to postpetition intercompany claims between and among the Debtors. In connection with this relief, the Debtors respectfully request a waiver of certain of the operating guidelines established by the Office of the U.S. Trustee for Region 3 that require the Debtors to close all prepetition bank accounts, open new accounts designated as debtor-in-possession accounts, and provide new business forms and stationery.

20.     The Debtors also request that no bank participating in the Cash Management System (the "Cash Management Banks") that honors a prepetition check issued prior to the Petition Date or other item drawn on any of the Debtors' accounts that are the subject of this Motion (a) at the direction of the Debtors, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite implementation of reasonable item handling procedures, be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item being honored postpetition. The Debtors further request the authority to pay all undisputed prepetition amounts outstanding as of the Petition Date, if any, owed to the Cash Management Banks as service charges for the maintenance of the Cash Management System, including processing charges

related to any credit or debit card transactions. The Debtors believe that such flexibility accorded the Cash Management Banks is necessary to induce the Cash Management Banks to continue providing cash management services without additional credit exposure.

## BASIS FOR RELIEF

### A. Continued Use of the Debtors' Existing Cash Management System is in the Best Interests of the Debtors' Estates and Creditors

21.     The Debtors seek authority to continue utilizing their Cash Management System, as described above, on a postpetition basis. It is critical that the Debtors remain able to manage cash and coordinate transfers of funds to efficiently and effectively operate their business operations. Substantially disrupting their current cash management procedures would impair the Debtors' ability to preserve and enhance their respective going concern value during these Chapter 11 Cases.

22.     The Cash Management System utilizes the Debtors' Bank Accounts to effectively and efficiently collect, concentrate, and disburse funds as needed in the Debtors' business. The Cash Management System provides significant benefits to the Debtors, including the ability to: (a) closely track, and thus control, all corporate funds through the provision of regular status reports on the location and amount of all funds, (b) ensure cash availability, and (c) reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate account balance and presentment information. Indeed, a disruption in the Cash Management System would likely cause delays in the collection and disbursement of funds, thus impeding the Debtors' ability to carry out their normal business operations to the detriment of employees, customers, and vendors.

23.     With its accounting controls, the Cash Management System also enables the Debtors to trace funds through the system and ensure that all transactions are adequately

documented and readily ascertainable.  The Debtors will continue to maintain detailed records reflecting all transfers of funds.

24.    It is in the best interests of the Debtors' estates that the Cash Management System be maintained.  Further, the Debtors' sale efforts will be facilitated by preserving the "business as usual" atmosphere and avoiding the distractions that would inevitably be associated with a substantial disruption in the Cash Management System.  Accordingly, the Debtors respectfully request that the Court authorize their continued use of the Cash Management System.

25.    This Court has the authority to grant the requested relief pursuant to its equitable powers under section 105(a) of the Bankruptcy Code.  Section 105(a) provides, in relevant part, that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  The relief requested herein is both necessary and appropriate to allow the Debtors to successfully reorganize and to maximize the value of their estates.

26.    Bankruptcy courts routinely grant chapter 11 debtors authority to continue utilizing existing cash management systems and treat requests for such authority as a relatively "simple matter[]."  In re Baldwin-United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).  Courts in this circuit have recognized that allowing a debtor to maintain existing cash management systems is appropriate.  See, e.g., In re Genesis Health Ventures, Inc., 402 F.3d 416, 418 (3d Cir. 2005); In re Kindred Healthcare, Inc., 2003 WL 22327933, at *1 (Bankr. D. Del. Oct. 9, 2003).

27.    Allowing debtors to utilize their prepetition cash management systems is entirely consistent with applicable provisions of the Bankruptcy Code.  Delaware bankruptcy

courts have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992), aff'd in part and rev'd in part, 997 F.2d 1039 (3d. Cir. 1993), cert. denied sub nom Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp., 510 U.S. 1110 (1994); see also In re Pliant Corp., No. 09-10443 (MFW) (Bankr. D. Del. Feb. 12, 2009) (order authorizing debtors' use of existing cash management systems in a manner consistent with their prepetition practices); In re Smurfit Stone Container Corp., No. 09-10235 (BLS) (Bankr. D. Del. Jan. 27, 2009) (order authorizing debtors continued use of their centralized cash management system); In re Merisant Worldwide, Inc., No. 09-10059 (PJW) (Bankr. D. Del. Jan. 13, 2009) (order authorizing debtors' use of existing cash management system to manage their cash); In re Tribune Co., No. 08-13141 (KJC) (Bankr. D. Del. Dec. 10, 2008) (order authorizing debtors' use of existing cash management system for various purposes); and In re Hilex Poly Co., LLC, No. 08-10890 (KJC) (Bankr. D. Del. May 7, 2008) (order authorizing debtors' use of existing cash management system to manage their cash).    The Third Circuit has agreed, emphasizing the "huge administrative burden" and economic inefficiency of requiring the debtors to maintain all accounts separately.    Columbia Gas, 997 F.2d at 1061; see also In re Southmark Corp., 49 F.3d 1111, 1114 (5th Cir. 1995) (maintaining a cash management system allows debtor "to administer more efficiently and effectively its financial operations and assets").

### REQUEST FOR AUTHORITY TO MAINTAIN EXISTING BANK ACCOUNTS AND CONTINUE TO USE EXISTING CHECKS AND BUSINESS FORMS

28.    The U.S. Trustee for Region 3, who administers bankruptcy cases filed in the District of Delaware, has issued certain chapter 11 operating guidelines pursuant to 28 U.S.C. § 586.  These guidelines require that chapter 11 debtors, among other things: (a) close all

existing bank accounts upon filing of their petitions and open new "debtor-in-possession" accounts in certain financial institutions designated as authorized depositories by the U.S. Trustee; (b) establish one debtor-in-possession account for all estate monies required for the payment of taxes; and (c) maintain a separate debtor-in-possession account for cash collateral.

### A.    Authority to Maintain Existing Bank Accounts

29.    The Debtors seek a waiver of the U.S. Trustee's requirement that their bank accounts be closed and that new, postpetition bank accounts be opened.  If enforced in these Chapter 11 Cases, such requirements would cause substantial disruption in the Debtors' businesses.  As described in detail above, the Debtors' bank accounts comprise an established Cash Management System that the Debtors need to maintain to ensure smooth collections and disbursements in the ordinary course of their businesses.  So as to avoid delays in paying obligations incurred postpetition, and to ensure as smooth a transition into chapter 11 as possible, the Debtors should be permitted to continue to maintain their existing bank accounts.  The Debtors request that such existing bank accounts be deemed debtor-in-possession accounts and that the Debtors be authorized to maintain and continue using these accounts in the same manner and with the same account numbers, styles and document forms as those employed during the prepetition period.  The Debtors further request that, if necessary, the Debtors shall be permitted to open new accounts and close the existing accounts in the normal course of business operations.  Otherwise, transferring the Debtors' bank accounts will be disruptive, time consuming and expensive.  The Debtors will, however, provide advanced notice to the U.S. Trustee of their intent to open or close any bank accounts.

30.    In other cases, this Court has waived the strict enforcement of bank account closing requirements and replaced them with an alternative procedure that provides the same protection.  See, e.g., In re Ultimate Acquisition Partners, LP, No. 11-10245 (MFW)

(Bankr. D. Del. Feb. 23, 2011) (order authorizing debtors to use existing accounts as debtor in possession accounts); In re Appleseed's Intermediate Holdings LLC, No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011) (same); In re Local Insight Media Holdings, Inc., No. 10-13677 (KG) (Bankr. D. Del. Nov. 19, 2010) (same); In re Claim Jumper Restaurants, LLC, No. 10-12819 (KG) (Bankr. D. Del. Sept. 13, 2010) (same).

31.    The Debtors represent that if the relief requested herein is granted, they will implement appropriate mechanisms to ensure that no payments will be made on any debts incurred by them prior to the Petition Date, other than those authorized by this Court.  For example, concurrently with the filing of this Motion, the Debtors are filing motions requesting authority to pay certain prepetition obligations to employees, taxing authorities, customers and other key constituencies in the ordinary course of business.  To prevent the possible inadvertent payment of prepetition claims, except those otherwise authorized by the Court, the Debtors will immediately advise the Cash Management Banks not to honor checks issued prior to the Petition Date.  The Debtors will work closely with the Cash Management Banks to ensure that appropriate procedures are in place to prevent checks issued prepetition from being honored absent this Court's approval.

**B.    Authority to Continue to Use Existing Checks and Business Forms**

32.    Local Rule 2015-2(a) provides that the Debtors may, with Court approval, continue to use their existing checks and business forms without imprinting "DIP" or "Debtor-in-Possession" thereon until such forms are depleted.  In accordance with Local Rule 2015-2(a), the Debtors request that they be authorized to continue to use all correspondence, checks and business forms (including, but not limited to, letterhead, purchase orders, and invoices) existing immediately before the Petition Date without reference to the Debtors' status as debtors-in-possession.  If the Debtors were required to change their correspondence, checks and business

forms, they may be forced to choose standard forms rather than the current forms with which the Debtors' employees, customers and vendors are familiar.  Such a change in operations would create a sense of disruption and potential confusion within the Debtors' organization and confusion for the Debtors' customers and vendors.

33.    The Debtors believe that it would be costly and disruptive to cease using all existing forms and to purchase and begin using new stationery, checks and business forms. The Debtors respectfully submit that to do so would be unnecessary and that appropriate care can be taken to assure the proper use of the existing forms.  The Debtors request authority to use their prepetition checks and business forms and only purchase new check stock and business forms with the "debtor-in-possession" label when their current stock is depleted.

34.    In other cases, this Court has allowed debtors to use their prepetition checks and business forms without the "debtor-in-possession" label, at least until the debtors depleted their existing supply of checks and business forms. See, e.g., In re Ultimate Acquisition Partners, LP, No. 11-10245 (MFW) (Bankr. D. Del. Feb. 23, 2011) (order authorizing debtors to continue to use existing business forms without alteration); In re Appleseed's Intermediate Holdings LLC, No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011) (same); In re Local Insight Media Holdings, Inc., No. 10-13677 (KG) (Bankr. D. Del. Nov. 19, 2010) (same); In re Claim Jumper Restaurants, LLC, 10-12819 (KG) (Bankr. D. Del. Sept. 13, 2010) (same).

35.    The Debtors should therefore be authorized to use their existing checks and business forms.  The Debtors use a significant number of checks and a wide variety of business forms in the ordinary course of their business operations.  To require the Debtors to revise all of their existing checks and business forms would be unduly burdensome and costly, particularly when appropriate care can be taken to assure the proper usage of the existing forms.

**REQUEST THAT THE COURT WAIVE THE DEPOSIT REQUIREMENTS OF**
**11 U.S.C. §345(B) ON AN INTERIM BASIS**

36.     The Debtors do not maintain any investments, cash or otherwise, except as described above with regard to the Cash Management System.  All of the Debtors' funds are held in cash or certificates of deposit in the Bank Accounts.  As of the Petition Date, the Debtors held approximately $1.32 million in the Bank Accounts (including the CD Accounts).  The Debtors do not invest any other funds.  The majority of the Bank Accounts have deposits of less than $250,000, thus clearly satisfying the requirements of section 345 of the Bankruptcy Code.  As of the Petition Date, two (2) Bank Accounts contain deposits in excess of $250,000: the Operating Account and one of the CD Accounts.  Both of these accounts are maintained with Bank of America, which is an authorized depository by the U.S. Trustee.

37.     The Debtors are requesting that the Court waive the requirements of section 345(b) of the Bankruptcy Code on an interim basis and permit them to maintain their deposits in accordance with their existing deposit practices until such time as the Debtors obtain this Court's approval to deviate from the guidelines imposed under section 345(b) of the Bankruptcy Code on a final basis.

38.     Section 345(a) of the Bankruptcy Code authorizes deposits or investments of money of a bankruptcy estate, such as cash, in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."   11 U.S.C. § 345(a).  For deposits or investments that are not "insured or guaranteed by the United States or by a department agent or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or

invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety.  11 U.S.C. § 345(b).

39.    A court may, however, relieve a debtor-in-possession of the restrictions imposed by section 345(b) for "cause."  11 U.S.C. § 345(b).  Consistent with section 345(b), Local Rule 2015-2(b) provides that no waiver of "section 345 shall be granted by the Court, without notice and an opportunity for hearing, in accordance with these Local Rules." Nevertheless, Local Rule 2015-2(b) further provides that "if a motion for such waiver is filed on the first day of a chapter 11 case in which there are more than 200 creditors, the Court may grant an interim waiver until a hearing on the Debtors' motion can be held."

40.    As this Motion is being filed on the first day of the Debtors' Chapter 11 Cases and the Debtors collectively have in excess of 200 creditors, the Debtors request that the Court enter an order waiving, on an interim basis, the requirements of section 345(b) of the Bankruptcy Code for forty-five (45) days, without prejudice to the Debtors' ability to seek a further interim or final waiver.  Further, given that all of the Debtors' funds are held in cash or certificates of deposit and at institutions authorized by the U.S. Trustee, and the mechanisms in place to ensure the security of the Cash Management System, the Debtors submit that cause exists to grant an interim forty-five (45) day waiver of the requirements of section 345(b) of the Bankruptcy Code.  This Court previously has granted similar relief on numerous occasions.  See, e.g., In re Pliant Corp., No. 09-10443 (MFW) (Bankr. D. Del. Feb. 12, 2009) (order waiving section 345(b) requirements on an interim basis for forty-five (45) days with respect to the debtors' established deposit practices); In re Smurfit Stone Container Corp., No. 09-10235 (BLS) (Bankr. D. Del. Interim: Jan. 27, 2009) (same); In re Merisant Worldwide, Inc., No. 09-10059

(PJW) (Bankr. D. Del. Jan. 13, 2009) (same); and <u>In re Tribune Co.</u>, No. 08-13141 (KJC) (Bankr. D. Del. Dec. 10, 2008) (same).

### REQUEST THAT THE COURT ALLOW ADMINISTRATIVE EXPENSE STATUS FOR INTERCOMPANY TRANSACTIONS

41.    In the normal course of their businesses, the Debtors engage in various intercompany transactions due to their centralized cash administration system.  As of the Petition Date, there are numerous intercompany claims (the "<u>Intercompany Claims</u>") that reflect intercompany receivables and payables made in the ordinary course between and among the Debtors (the "<u>Intercompany Transactions</u>").   Such receivables and payables are generally generated for, among other things, purchases required for normal operations, miscellaneous consolidated payments by a parent entity which represent obligations of a subsidiary entity (<u>e.g.</u>, tax payments), and services provided by one Debtor to another Debtor.

42.    The Debtors maintain records of all Intercompany Transactions and can ascertain, trace and account for all Intercompany Transactions between and among the Debtors. Further, to ensure that each individual Debtor will not fund, at the expense of its respective creditors, the operations of another entity, the Debtors respectfully request that, pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, all Intercompany Claims against one Debtor by another Debtor arising after the Petition Date as a result of Intercompany Transaction be accorded administrative priority expense status.  If all Intercompany Claims are accorded administrative priority expense status, each entity will continue to bear ultimate repayment responsibility for such ordinary course transactions.

43.    The Debtors submit that approving the treatment of Intercompany Claims is in the best interests of their estates.  Additionally, administrative expense treatment for postpetition intercompany transactions, as requested herein, has been granted in other chapter 11

cases in this District.  See, e.g., In re Appleseed's Intermediate Holdings LLC, No. 11-10160

(KG) (Bankr. D. Del. Jan. 20, 2011) (order granting administrative expense priority to

intercompany claims arising after the petition date); In re Claim Jumper Restaurants, LLC, No.

10-12819 (KG) (Bankr. D. Del. Sept. 13, 2010) (same); In re American Safety Razor Co., LLC,

No. 10-12351 (MFW) (Bankr. D. Del. Aug. 23, 2010); In re Pliant Corp., No. 09-10443 (MFW)

(Bankr. D. Del. Feb. 12, 2009).

44.    To the extent Fed. R. Bankr. P. 6004(h) is applicable to this Motion, the

Debtors also seek a waiver of the fourteen (14) day stay under Fed. R. Bankr. P. 6004(h).

**NOTICE**

45.    Notice of this Motion has been provided to: (i) the Office of the United

States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the

United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the

Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (vi) counsel to the

administrative agent for the Debtors' prepetition lenders; (vii) counsel to the administrative agent

for the proposed postpetition lenders; (viii) counsel to the indenture trustee for the Debtors'

prepetition secured noteholders; (ix) indenture trustee for the Debtors' prepetition unsecured

noteholders; and (x) all parties affected by the relief sought in this Motion.  Notice of this Motion

and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light

of the nature of the relief requested herein, the Debtors believe no other or further notice is

necessary.

WHEREFORE, the Debtors respectfully request that the Court enter an order, in

substantially the form attached as Exhibit C hereto, (i) authorizing and approving the Debtors'

continued use of their existing Cash Management System, (ii) authorizing the Debtors to

continue using prepetition bank accounts and business forms, (iii) waiving the requirements of

section 345(b) on an interim basis, (iv) granting administrative expense status to postpetition

intercompany claims by and between the Debtors, and (v) granting such other and further relief

as the Court may deem just and proper.

Dated: April 1, 2011
     Wilmington, Delaware

Respectfully submitted,

RICHARDS, LAYTON & FINGER, P.A.

/s/ Daniel J. DeFranceschi
Daniel J. DeFranceschi (No. 2732)
Michael J. Merchant (No. 3854)
L. Katherine Good (No. 5101)
Amanda R. Steele (No. 5530)
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

STROOCK & STROOCK & LAVAN LLP
Kristopher M. Hansen
Sayan Bhattacharyya
Marianne Mortimer
Matthew G. Garofalo
180 Maiden Lane
New York, New York 10038-4982
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

Proposed Counsel to the
Debtors and Debtors-in-Possession