# EXHIBIT 2

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMBASSADORS INTERNATIONAL, INC., <u>et al.</u>,[1] | Case No. 11-11002 (KG) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 17** |

### ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; (II) APPROVING THE FORM AND MANNER OF NOTICE OF THE SALE AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (III) AUTHORIZING CERTAIN OF THE DEBTORS TO EXECUTE AN ASSET PURCHASE AGREEMENT; <u>AND (IV) SCHEDULING AN AUCTION AND SALE HEARING</u>

Upon consideration of the Motion (the "<u>Sale Motion</u>")[2] of the Debtors, pursuant to sections 105, 363, 365, 503 and 1112(b) of the Bankruptcy Code, Bankruptcy Rules 1017(a), 2002, 6004, 9007 and 9014 and Local Rules 2002-1 and 6004-1, for entry of: (i) an order (the "<u>Bidding Procedures Order</u>") (a) approving proposed bidding procedures (the "<u>Bidding Procedures</u>") in connection with the Sale of the Acquired Assets as more fully described in the Stalking Horse Agreement by and among the Sellers and the Stalking Horse Bidder; (b) authorizing the Sellers' execution of the Stalking Horse Agreement; (c) scheduling the Auction and the Sale Hearing; and (d) approving the form and manner of notice of the Auction, including

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Ambassadors International, Inc. (8605); Ambassadors Cruise Group, LLC (2448); Ambassadors, LLC (0860); EN Boat LLC (8982); AQ Boat, LLC (5018); MQ Boat, LLC (5095); DQ Boat, LLC (5064); QW Boat Company LLC (0658); Contessa Boat, LLC (9452); CQ Boat, LLC (9511); American West Steamboat Company LLC (0656); and Ambassadors International Cruise Group (USA), LLC (7304). The mailing address for each Debtor is 2101 4th Avenue, Suite 210, Seattle, WA 98121.

[2] Capitalized terms used but otherwise not defined herein shall have the meanings set forth in the *Motion of the Debtors for Entry of Orders (I) Approving Bidding Procedures for the Sale of Certain of the Debtors' Assets Free and Clear of All Liens, Claims and Encumbrances; (II) Approving the Form and Manner of Notice of the Sale and Assumption and Assignment of Executory Contracts and Unexpired Leases; (III) Scheduling an Auction and Sale*

the form and manner of service of the Auction Notice attached hereto as Exhibit 2 and ~~the notice of~~ the proposed Assumption and Assignment Notice in the form attached hereto as Exhibit 3; and (ii) an order (a) approving the Sale of the Acquired Assets free and clear of all liens, claims and encumbrances to the Stalking Horse Bidder or such other party that is the Successful Bidder (as defined in the Bidding Procedures) at the Auction; and (b) dismissing the Chapter 11 Case of Cruise Group; and the Court having conducted a hearing to consider the relief requested in the Sale Motion (the "Bidding Procedures Hearing"); and the Court having jurisdiction to consider the Bidding Procedures, the approval of the execution ~~of~~**by** the Sellers of the Stalking Horse Agreement and the related relief requested in the Sale Motion in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and consideration of the Bidding Procedures and the related relief requested in the Sale Motion, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections, if any, to the Bidding Procedures and the related relief requested in the Sale Motion having been duly noted in the record of the Bidding Procedures Hearing; and upon the record of the Bidding Procedures Hearing, and all other pleadings and proceedings in this case, including the Sale Motion, the Detillion Declaration ~~and,~~ the Shepard Declaration **and the Declaration of Hans Birkholz in Further Support of Motion of Debtors for Entry of an Order Approving Bidding Procedures for the Sale of Certain of the Debtors' Assets Free and Clear of All Liens, Claims and Encumbrances**; and it appearing that the Bidding Procedures and the other scheduling relief requested in the Sale Motion is in the best interests of the Sellers, their estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing ~~therefore~~**therefor**;

*Hearing; (IV) Approving Such Sale and (V)Dismissing the Chapter 11 Bankruptcy Case of Ambassadors International Cruise Group (USA) LLC* [Docket No. 17].

**IT IS HEREBY FOUND, DETERMINED, AND CONCLUDED THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (0). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a) with respect to the Bidding Procedures ~~and related relief requested in the Sale Motion,~~**, the Auction Notice and the Assumption and Assignment Notice** and the approval of the Sellers' entry into the Stalking Horse Agreement.

D.      Good and sufficient notice of the Bidding Procedures and the other related relief sought in the Sale Motion has been given to all interested persons and entities, including, without limitation, (i) the Office of the United States Trustee for the District of Delaware; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (vi) counsel to the administrative agent for the Debtors' prepetition lenders; (vii) counsel to the administrative agent for the proposed post-petition lenders; (viii) counsel to the indenture trustee for the Debtors' prepetition secured noteholders; (ix) the indenture trustee for the Debtors' prepetition unsecured noteholders; (x) counsel to the Debtors' controlling shareholder(s); (xi) counsel to the Stalking Horse Bidder~~;~~**;**

(xii) all potential Assigned Contract counterparties; (xiii) all parties known or reasonably believed to have expressed an interest in the Acquired Assets; (xiv) the United States Coast Guard; (xv) all parties who are known to possess or assert a secured claim against the Acquired Assets; ~~and~~ (xvi) the relevant taxing authorities having jurisdiction over any of the Acquired Assets**; and (xvii) counsel to the Committee (as defined herein)**.

E.      The Sellers have articulated good and sufficient reasons for, and the best interests of the Sellers will be served by, this Court granting the preliminary relief requested in the Sale Motion, including approval of (i) the Bidding Procedures, attached hereto as <u>Exhibit 1</u>; (ii) the Auction Notice attached hereto as <u>Exhibit 2</u>; (iii) the Assumption and Assignment Notice attached hereto ~~and~~**as** <u>Exhibit 3</u>; and (iv) the Sellers' execution of the Stalking Horse Agreement.

F.      The proposed notice of the sale of the Acquired Assets and the Bidding Procedures, as set forth in the Sale Motion~~, is good, appropriate, adequate and sufficient, and~~ is reasonably calculated to provide all interested parties with timely and proper notice of the Sale and the Bidding Procedures, and no other or further notice is required for the Sale of the Acquired Assets to the Stalking Horse Bidder (or the Successful Bidder, as applicable), and the assumption and assignment of the Assigned Contracts as contemplated in the Bidding Procedures, as set forth herein and in the Sale Motion.

G.      The Sellers have articulated good and sufficient reasons for, and the best interests of the Sellers' estates will be served by, this Court (i) authorizing the Sellers' execution of the Stalking Horse Agreement following the Petition Date but prior to the Auction, and (ii) scheduling an Auction and considering approval of the Sale and the transfer of the Acquired Assets to the Stalking Horse Bidder (or the Successful Bidder, as applicable), free and clear of all

liens, claims and encumbrances (other than Permitted Encumbrances) pursuant to section 363 of the Bankruptcy Code.

H.      The Expense Reimbursement (as defined in the Bidding Procedures attached hereto) to be paid to the Stalking Horse Bidder, under the circumstances described herein and in the Stalking Horse Agreement, is: (i) an actual and necessary cost and expense of preserving the Sellers' estates, within the meaning of section 503(b) of the Bankruptcy Code; (ii) commensurate to the real and substantial benefits conferred upon the Sellers' estates by the Stalking Horse Bidder; (iii) reasonable and appropriate in light of the size and nature of the proposed Sale and comparable transactions; and (iv) necessary to induce the Stalking Horse Bidder to continue to pursue the Sale and to continue to be bound by the Stalking Horse Agreement.

I.      Moreover, the Expense Reimbursement induced the Stalking Horse Bidder to submit a bid that will serve as a minimum or floor bid on which the Sellers, their creditors and other bidders can rely. The Stalking Horse Bidder has provided a material benefit to the Sellers and their creditors by increasing the likelihood that the best possible price for the Acquired Assets will be received. Accordingly, the Expense Reimbursement represents the best method for maximizing value for the benefit of the Sellers' estates.

**NOW ~~THEREFORE~~THEREFOR, IT IS HEREBY ORDERED, ADJUDGED AND ~~DECREEED~~DECREED THAT:**

1.     The Sale Motion is GRANTED to the extent set forth herein and with respect to the relief requested in relation to the Bidding Procedures and other related relief in respect of the Sale.

2.     The Bidding Procedures are hereby approved, are incorporated herein by reference, and shall govern all Bids and Bid proceedings relating to the Acquired Assets. The Sellers are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

~~3.     The Expense Reimbursement, as defined in the Bidding Procedures, is hereby approved and incorporated herein.~~

**3.**     ~~4.~~The deadline for submitting a Qualified Bid (as such term is defined in the Bidding Procedures) shall be **~~April 29,~~May 13, 2011 at 4̶12:00 p.m. (noon) (prevailing Eastern Time)** (the "Bid Deadline").

**4.**     ~~5.~~To the extent at least one Qualified Bid, other than the Stalking Horse Bidder's bid, is timely received, the Sellers shall conduct the Auction on **May ~~2,~~16, 2011 at 10:00 a.m. (prevailing Eastern Time)** at the offices of the Sellers' proposed co-counsel, Stroock & Stroock & Lavan, LLP, 180 Maiden Lane, New York, New York 10038. Only the Stalking Horse Bidder and any other Qualified Bidder will be permitted to participate in the Auction. The Auction will be transcribed or videotaped.

**5.**     ~~6.~~Prior to the Auction~~, but subsequent to the Petition Date~~, the Sellers ~~will be~~**are** authorized to execute the Stalking Horse Agreement.

**6.**     ~~7.~~At the Auction, when only one Qualified Bidder remains and the Sellers have selected that Qualified Bidder's Bid as the Highest and Best Bid (as described in the Bidding

Procedures), the Auction will conclude. As soon as reasonably practicable following the conclusion of the Auction, the Sellers shall file a notice identifying the Successful Bidder ~~and the Back-Up Bidder, if any,~~ and will serve such notice on the counterparties to the Assigned Contracts via facsimile or email (if available), or otherwise via FedEx (but only if facsimile or email are not available).

**7.** ~~8.~~ The Stalking Horse Agreement is a Qualified Bid, and the Stalking Horse Bidder is a Qualified Bidder, for all purposes and requirements pursuant to the Bidding Procedures, notwithstanding the requirements that Potential Bidders must satisfy to be a Qualified Bidder. ~~If the Sellers hold the Auction, the Stalking Horse Bidder may not be selected as the Back-Up Bidder absent the Stalking Horse Bidder's express written consent.~~

**8.** ~~9.~~ If the Sellers do not receive any Qualified Bids other than the Stalking Horse Agreement, the Sellers will not hold the Auction, and the Stalking Horse Agreement will be the Successful Bid and the Stalking Horse Bidder will be named the Successful Bidder.

**9.** ~~10.~~ All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the transfer of the Acquired Assets.

**10.** ~~11.~~ The Court will consider approval of the Sale to the Successful Bidder at the Sale Hearing on **May ~~[—]~~18, 2011 at ~~[—:—]~~10:00 a.m.~~/p.m.~~ (prevailing Eastern Time)**.

**11.** ~~12.~~ Any party seeking to (i) object to the validity of the Cure Costs as determined by the Sellers or otherwise assert that any other amounts, defaults, conditions or pecuniary losses must be cured or satisfied under any of the Assigned Contracts in order for such contract or lease to be assumed and assigned or (ii) object to the assumption and assignment of any Assigned Contracts on any other basis (including, but not limited to, objections to adequate assurance of

future performance), must file a written objection in compliance with the Bankruptcy Rules and the Local Rules (an "Assumption and Assignment Objection") with the Bankruptcy Court setting forth the cure amount the objector asserts to be due, and the specific types and dates of the alleged defaults, pecuniary losses and conditions to assignment and the support ~~therefore~~**therefor**, so that such objection is filed no later than **4:00 p.m. (prevailing Eastern Time) on May ~~[    ],~~13, 2011** (the "Assumption and Assignment Objection Deadline"), and such objection shall also be served so the same is actually received on or before the Assumption and Assignment Objection Deadline by (i) proposed co-counsel to the Sellers, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038-4982, Attn:  Kristopher M. Hansen, Fax: (212) 806-6006, E-mail: khansen@stroock.com; (ii) proposed co-counsel to the Sellers, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Daniel J. DeFranceschi, Fax: (302) 498-7816, E-mail: defranceschi@rlf.com; (iii) proposed financial advisor to the Sellers, Imperial Capital, LLC, 2000 Avenue of the Stars, 9th Floor, South Tower, Los Angeles, California 90067, Attn: Chris Shepard, Fax: (310) 777-3052, Email: cshepard@imperialcapital.com; (iv) **proposed co-**counsel for ~~any~~**the** official committee of unsecured creditors appointed in these Chapter 11 Cases~~; (v~~ **(the "Committee"), Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068, Attn: John K. Sherwood, Fax:  (973) 597-2539, E-mail: jsherwood@lowenstein.com; (v) proposed co-counsel for the Committee, Bifferato Gentilotti LLC, 800 North King Street, Plaza Level, Wilmington, Delaware 19801, Attn: Garvan F. McDaniel, Fax: (302) 429-8600, E-mail: gmcdaniel@bglawde.com;**

**(vi) proposed financial advisor to the Committee, Macquarie Capital (USA) Inc., 125 W. 55th Street, New York, New York 10019, Attn: Ed Albert, Fax: (212) 231-1717, E-mail:**

**ed.albert@macquarie.com; (vii**) counsel to Whippoorwill, Gibson Dunn & Crutcher LLP, 200

Park Avenue, New York, New York 10166, Attn: Matt Williams, Fax: (212) 351-5232, Email:

mjwilliams@gibsondunn.com; and (a**viii**) counsel to the Stalking Horse Bidder~~; or (b) the~~

~~Successful Bidder, as applicable~~ (collectively, the "Notice Parties")

**12.** ~~13.~~ Objections to approval of the Sale, including the sale of the Acquired Assets

free and clear of liens, claims and encumbrances (other than Permitted Encumbrances) must be in

writing, state the basis of such objection with specificity and be filed with this Court in compliance

with the Bankruptcy Rules and the Local Rules and served so as to be received by the Notice

Parties on or before ~~May [___], 2011 at 4~~**12**:00 p.m. **(noon) (prevailing Eastern Time)**~~.~~ **on May**

**17, 2011.**

~~14.     The Sellers are authorized to pay, without further order of the Court, to the Stalking~~

~~Horse Bidder the Expense Reimbursement (in the event that such Expense Reimbursement is~~

~~payable under the terms of the Bidding Procedures and this Order) on the terms set forth in the~~

~~Bidding Procedures.  The Expense Reimbursement shall be a joint and several obligation among~~

~~the Sellers and shall constitute an administrative expense claim under section 503(b) of the~~

~~Bankruptcy Code, and shall be payable under the terms and conditions of the Bidding Procedures,~~

~~notwithstanding section 507(a) of the Bankruptcy Code.  The Sellers' obligation to pay the~~

~~Expense Reimbursement shall survive termination of the Stalking Horse Agreement.~~

**13.** ~~15.~~ The Sale of the Acquired Assets is consistent with section 363(b)(1)(A) of the

Bankruptcy Code and**, as the Sale does not violate** the Sellers' privacy policy, ~~and~~ no consumer

privacy ombudsman is necessary in connection with the Sale.

**14.** ~~16.~~ Wilmington Trust FSB (the "Indenture Trustee"), solely in its capacity as

Indenture Trustee under the Senior Secured Notes, and**/or** Law Debenture Trust Company of New

York, in its capacity as Agent under the Prepetition Working Capital Facility, may submit a ~~credit bid~~**Credit Bid (as defined in the Bidding Procedures)** on behalf of the Stalking Horse Bidder for the ratable benefit of the holders of the Senior Secured Notes and**/or** on behalf of the lenders under the Prepetition Working Capital Facility, respectively. ~~The Stalking Horse Bidder is authorized to direct the Indenture Trustee (on behalf of the Senior Secured Notes and, for the avoidance of doubt, not on behalf of itself as purchaser) to make one or more credit bids of the Senior Secured Notes at the Auction equal to the Credit Bid Amount or such other amount as the Stalking Horse Bidder determines is appropriate, up to the amount of obligations outstanding under the Senior Secured Notes, pursuant to section 363(k) of the Bankruptcy Code.~~[3]

**15.** ~~17.~~ The Auction Notice and the Assumption and Assignment Notice, substantially in the form attached hereto as Exhibit 2 and Exhibit 3, respectively, are good and sufficient for all purposes. Within two (2) business days of the entry of this Order, the Sellers will serve the Auction Notice on all parties provided with the notice of the Sale Motion, all parties identified by the Sellers as potentially interested purchasers and all parties on the Sellers' consolidated list of creditors. The Sellers will, on or before ~~April [___],~~**May 3,** 2011, serve the Assumption and Assignment Notice on all non-debtor parties to the Assigned Contracts potentially to be assumed and assigned in connection with the Sale. No other or further notice shall be required. No finding or ruling is made in this Bidding Procedures Order as to the adequacy of any proposed Sale, it being intended that such approval will be sought at the Sale Hearing.

**16.** ~~18.~~ All Potential Bidders at the Auction shall be deemed to have consented to the core jurisdiction of this Court and waived any right to jury trial in connection with any disputes

---

[3] **Any Credit Bid made by or on behalf of the Stalking Horse Bidder shall be subject to the Committee's right to challenge such Credit Bid on any grounds at or prior to the Sale Hearing.**

relating to the Auction, the sale of the Acquired Assets and the construction and enforcement of the Stalking Horse Agreement.

**17.** ~~19.~~ Each Qualified Bidder participating at the Auction, including the Stalking Horse Bidder**,** will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

**18.     All objections to the Sale are fully preserved.  The parties shall confer in good faith with respect to an expedited discovery schedule which enables the Committee to review relevant documents and take depositions prior to the deadline for objections to approval of the Sale.**

**19.** ~~20.~~ The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated:       April __, 2011
             Wilmington, Delaware

                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT 1**

## **Bidding Procedures**

# BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to a sale of certain assets (together, the "Acquired Assets") of Ambassadors International, Inc., Ambassadors Cruise Group, LLC, Ambassadors, LLC, EN Boat LLC, AQ Boat, LLC, MQ Boat, LLC, QW Boat Company LLC, Contessa Boat, LLC, American West Steamboat Company LLC, DQ Boat, LLC and CQ Boat LLC (collectively, the "Sellers", and together with Ambassadors International Cruise Group (USA), LLC, the "Debtors").  The Acquired Assets being acquired and the terms and conditions upon which the Sellers contemplate consummating a sale are further described in the form of the Asset Purchase Agreement (the "Stalking Horse Agreement") among the Sellers and a ~~newly-formed~~ designee of Whippoorwill Associates, Inc. ("Whippoorwill") that will be formed prior to consummation of the Sale (as defined herein) (the "Stalking Horse Bidder").  Copies of the form Stalking Horse Agreement are available for free by (i) sending a written request to the Sellers' claims and noticing agent, Phase Eleven Consultants, LLC (the "Claims Agent"), at 11 S. LaSalle Street, 7th Floor, Chicago, Illinois 60603, (ii) calling the Sellers' proposed co-counsel, Stroock & Stroock & Lavan LLP, at 212-806-~~5400,~~**5400 (Attn: Michael Magzamen),** or (iii) emailing **Stroock & Stroock & Lavan LLP at** ambassadors@stroock.com.  The sale of the Acquired Assets of the Sellers (the "Sale") pursuant to the Stalking Horse Agreement is subject to competitive bidding as set forth herein and approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to sections 105, 363, 365 and 503 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the Bankruptcy Court.

## I.      The Sale Hearing

At a hearing before the Bankruptcy Court (the "Sale Hearing"), the ~~Seller~~**Sellers** will seek entry of an order from the Bankruptcy Court approving and authorizing the Sale to the Successful Bidder (as defined below) on terms and conditions consistent with the Stalking Horse Agreement (as modified solely to the extent accepted by the ~~Seller~~**Sellers**) and in accordance with these Bidding Procedures.

## II.      Participation Requirements

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process (as defined below), each person or entity must deliver (unless previously delivered) to the Sellers, on or before the Bid Deadline (as defined below), (i) an executed confidentiality agreement in form and substance satisfactory to the Sellers (the "Confidentiality Agreement") and (ii) a *bona fide*, non-binding letter of intent or expression of interest with respect to a purchase of the Acquired Assets (together with the Confidentiality Agreement, the "Participation Requirements").  Each person or entity that delivers the Participation Requirements to the Sellers on or before the Bid Deadline is hereinafter referred to as a "Potential Bidder."

After a Potential Bidder delivers the Participation Requirements to the Sellers, the Sellers shall deliver or make available (unless previously delivered or made available) to each Potential Bidder certain designated information and financial data with respect to the Acquired Assets;

*provided*, *however*, that the Sellers, in ~~their discretion~~**consultation with the official committee of unsecured creditors appointed in these cases on April 11, 2011 (the "Committee")**, may decline to make such information available to a Potential Bidder if the Sellers believe that such Potential Bidder poses a competitive threat to the Sellers' businesses. The Sellers shall use commercially reasonable efforts to promptly provide, or identify and make available to the Stalking Horse Bidder, any information concerning Sellers, any of their subsidiaries, the Acquired Assets or the Sellers' businesses provided to any Potential Bidder which was not previously provided to the Stalking Horse Bidder.

## III.  Determination by the Sellers

The Sellers, after consultation with ~~any official committee of unsecured creditors appointed in these cases (the "~~**the** Committee")~~,~~ shall (a) coordinate the efforts of Potential Bidders in conducting their respective due diligence, (b) evaluate bids from Potential Bidders, (c) negotiate any bid made to acquire the Acquired Assets and (d) make such other determinations as are provided in these Bidding Procedures (collectively, the "Bidding Process"). Neither the Sellers nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Acquired Assets to any person who is not a Potential Bidder.

## IV.  Due Diligence

Up to and including the ~~Bid Deadline~~**date that is one day prior to the Auction**, as defined herein (the "Diligence Period"), the Sellers shall afford any Potential Bidder such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Sellers, in their business judgment, determine to be reasonable and appropriate. The Sellers may designate a representative to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders. Each Potential Bidder shall be required to acknowledge that it has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to submitting its Bid.

## V.  Bid Deadline

A Potential Bidder that desires to make a bid shall deliver copies of its bid by facsimile and/or email to (a) proposed co-counsel to the Sellers, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038-4982, Attn: Kristopher M. Hansen, Fax: (212) 806-6006, E-mail: khansen@stroock.com; (b) proposed co-counsel to the Sellers, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Daniel J. DeFranceschi, Fax: (302) 498-7816, E-mail: defranceschi@rlf.com; (c) proposed financial advisor to the Sellers, Imperial Capital, LLC, 2000 Avenue of the Stars, 9th Floor, South Tower, Los Angeles, California 90067, Attn: Chris Shepard, Fax: (310) 777-3052, Email: cshepard@imperialcapital.com; ~~and~~ (d) **proposed co-**counsel for ~~any Committee appointed in these cases; by no later than April 29, 2011 at 4~~**the Committee, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068, Attn: John K. Sherwood, Fax: (973) 597-2539, E-mail: jsherwood@lowenstein.com; (e) proposed co-counsel for the Committee, Bifferato Gentilotti LLC, 800 North King Street, Plaza Level, Wilmington, Delaware 19801, Attn: Garvan F. McDaniel, Fax: (302) 429-8600, E-mail: gmcdaniel@bglawde.com; and (f) proposed financial advisor to the Committee, Macquarie Capital (USA) Inc., 125 W. 55th**

**Street, New York, New York 10019, Attn: Ed Albert, Fax: (212) 231-1717, E-mail: ed.albert@macquarie.com; by no later than May 13, 2011 at 12**:00 p.m. (**noon)** (prevailing Eastern Time) (the "Bid Deadline").

## VI.    Bid Requirements

All bids (each hereinafter, a "Bid") must (a) be accompanied by a letter:

(i)     Offering to acquire **all or a specified portion of** the Acquired Assets and expressly agreeing to assume **all or a specified portion of** the liabilities to be assumed in the Sale pursuant to the Stalking Horse Agreement;

(ii)    Accompanied by a duly executed agreement attached to the letter, marked to show any proposed amendments and modifications to the Stalking Horse Agreement and its schedules and exhibits (the "Marked Agreement");

(iii)   Specifying Bid terms that are substantially the same **as** or better (as determined in the Sellers' reasonable business judgment**, in consultation with the Committee**) than the terms of the Stalking Horse Agreement;

(iv)    Agreeing that the Potential Bidder's offer is binding and irrevocable until the earlier of (i) the Closing Date (as defined herein), or (ii) twenty (20) days after the Sale Hearing;

(v)     Providing ~~for the payment in full in cash of the Sellers' obligations under the Prepetition Working Capital Facility (as defined herein) and all of the Sellers' obligations under any outstanding debtor-in-possession financing facility plus a cash component equal to or greater than the Credit Bid Consideration (as defined in the Stalking Horse Agreement);~~

~~(vi)   Offering to pay a purchase price greater than the aggregate consideration offered by the Stalking Horse Bidder pursuant to the Stalking Horse Agreement, plus an amount sufficient to cover the Expense Reimbursement plus $250,000 (the "Initial Overbid"); (vii)   Providing~~ that such Bid is not subject to any due diligence or financing contingency; **and**

~~(viii~~**(vi)**)     Agreeing not to request or assert entitlement to any transaction or break-up fee, expense reimbursement or similar type of payment; ~~and~~

~~(ix)   Agreeing to serve as the Back-Up Bidder in accordance with these Bidding Procedures.~~

(b) be accompanied by adequate assurance information (the "Adequate Assurance Information"), including (i) information about the Potential Bidder's financial condition, such as federal tax returns for two years, a current financial statement, or bank account statements, (ii) information demonstrating (in the Sellers' reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed Sale, (iii) evidence that the Potential Bidder has

obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid, (iv) the identity and exact name of the Potential Bidder (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the Sale), and (v) such additional information regarding the Potential Bidder as the Potential Bidder may elect to include. By submitting a Bid, Potential Bidders agree that the Sellers may disseminate their Adequate Assurance Information to affected landlords or contract counterparties in the event that the Sellers determine such bid to be (a) a Qualified Bid (as defined below) and (b) a higher and better bid than the Stalking Horse Agreement.

Potential Bidders may make one or more credit bids of some or all of their claims to the full extent permitted by section 363(k) of the Bankruptcy Code (a "Credit Bid"). For the avoidance of doubt, (a) Wilmington Trust FSB ("Wilmington Trust"), solely in its capacity as Indenture Trustee under the Senior Secured Notes[1] and (b) Law Debenture Trust Company of New York ("Law Debenture"), in its capacity as Agent under the Prepetition Working Capital Facility,[2] may submit a credit bid on behalf of the Stalking Horse Bidder for the ratable benefit of the holders of the Senior Secured Notes (the "Second Lien Noteholders") and on behalf of the lenders under the Prepetition Working Capital Facility (the "Prepetition Working Capital Facility Lenders"), respectively, to the fullest extent permitted by section 363(k) of the Bankruptcy Code. **[3]** For the avoidance of doubt, any Credit Bid submitted by Wilmington Trust, in its capacity as Indenture Trustee, shall be credited to the aggregate consideration offered by the Stalking Horse Bidder, pursuant to the Stalking Horse Agreement or in Overbids **(as defined herein)** offered by the Stalking Horse Bidder at the Auction, and Wilmington Trust shall not be considered to have submitted a Bid on its own behalf, or otherwise constitute a Potential Bidder, Qualified Bidder~~,~~ **or** Successful Bidder ~~or Back-Up Bidder~~. A Bid must be accompanied by (a) a certified check or wire transfer, payable to the order of the Sellers, in the amount of ~~10% of the Bid plus an amount sufficient to cover the Expense Reimbursement,~~**$1,000,000,** which funds will be deposited into an interest bearing escrow account to be identified and established by the Sellers (a "Good Faith Deposit") and (b) written evidence, documented to the Sellers' reasonable satisfaction, that demonstrates the Potential Bidder has available cash or a commitment for financing and such other evidence of ability to consummate the transaction as the Sellers may reasonably request, including proof that such funding commitments or other financing are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals (*provided*, that such commitments may have covenants and conditions reasonably acceptable to the Sellers).

---

[1] Reference is made to the 10% senior secured notes due 2012 issued by Ambassadors International, Inc. pursuant to that certain indenture dated as of November 13, ~~2009~~**2009, as amended, modified, supplemented or restated from time to time in accordance with its terms.**

[2] Reference is made to that certain Credit and Guaranty Agreement, dated as of March 23, 2010, by and among Ambassadors International, Inc. and its subsidiaries, the lenders from time to time party thereto, and Law Debenture, as Administrative Agent and Collateral Agent, as amended, modified, supplemented or restated from time to time in accordance with its terms.

**[3] Any Credit Bid made by or on behalf of the Stalking Horse Bidder shall be subject to the Committee's right to challenge such Credit Bid on any grounds at or prior to the Sale Hearing.**

The Sellers, in consultation with ~~any~~**the** Committee ~~appointed in the Sellers' bankruptcy~~ ~~cases~~, will review each Bid received from a Potential Bidder to ensure that it meets the requirements set forth above. A Bid received from a Potential Bidder that meets the above requirements will be considered a "Qualified Bid" and each Potential Bidder that submits a Qualified Bid will be considered a "Qualified Bidder." For the avoidance of doubt, the Stalking Horse Agreement is a Qualified Bid and the Stalking Horse Bidder is a Qualified Bidder, for all purposes and requirements pursuant to the Bidding Procedures, notwithstanding the requirements that Potential Bidders must satisfy to be a Qualified Bidder. Upon determination that a Bid received from a Potential Bidder constitutes a Qualified Bid, the Sellers shall, within one ~~business~~**(1)** day, provide the Stalking Horse Bidder with a copy of the Qualified Bid.

A Qualified Bid will be valued by the Sellers**, in consultation with the Committee,** based upon any and all factors that the Sellers deem pertinent, including, among others, (a) the amount of the Qualified Bid, (b) the risks and timing associated with consummating a transaction with the Potential Bidder, (c) any excluded assets or executory contracts and leases, ~~and~~ (d) any **liabilities not assumed and (e) any** other factors that the Sellers (in consultation with the Committee~~, if~~ ~~applicable~~) may deem relevant to the Sale.

The Sellers, in their business judgment, and in consultation with ~~any~~**the** Committee ~~appointed in the Sellers' bankruptcy cases~~, reserve the right to reject any Bid if such Bid:

    (a)    Is on terms that are more burdensome or conditional than the terms of the Stalking Horse Agreement;

    (b)    Requires any indemnification of the Potential Bidder in its Marked Agreement;

    (c)    Is not received by the Bid Deadline;

    (d)    Is subject to any contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the Acquired Assets (other than as may be included in the Stalking Horse Agreement); or

    (e)    Is not a Qualified Bid for any other reason as set forth above.

Any Bid rejected pursuant to this paragraph shall not be deemed to be a Qualified Bid. In the event that any Bid is so rejected, the Sellers shall cause such Potential Bidder to be refunded its Good Faith Deposit and all accumulated interest thereon within three (3) business days after the Bid Deadline. Notwithstanding anything set forth in these Bidding Procedures, in no event shall the Sellers determine that a Bid is a Qualified Bid unless each of the Bid requirements enumerated herein are satisfied.

## VII.    Auction Participation

Unless otherwise ordered by the Bankruptcy Court for cause shown, only the Stalking Horse Bidder and each Qualified Bidder are eligible to participate at the Auction (as defined below). At least one (1) ~~business~~ day prior to the Auction, each Qualified Bidder must inform the

Sellers in writing whether it intends to participate in the Auction. The Sellers will promptly thereafter inform (in writing) each Qualified Bidder, who has expressed its intent to participate in the Auction, (a) of the identity of all other Qualified Bidders that may participate in the Auction (and shall provide copies of the Qualified Bids to the Stalking Horse Bidder and any other Qualified Bidder who requests a copy of the Qualified Bids); and (b) of the Qualified Bid which the Sellers (in consultation with ~~any~~**the** Committee~~, if applicable~~) have deemed to be the highest and best Qualified Bid (the "<u>Highest and Best Bid</u>"). If the Sellers do not receive any Qualified Bids other than the Stalking Horse Agreement: (a) the Sellers will not hold an Auction; (b) the Stalking Horse Agreement will be the Successful Bid (as defined below) and (c) the Stalking Horse Bidder will be named the Successful Bidder.

# VIII. <u>Auction</u>

If at least one Qualified Bid other than the Stalking Horse Agreement is received by the Bid Deadline, the Sellers will conduct an auction (the "<u>Auction</u>").  The Auction shall take place at 10:00 a.m. (prevailing Eastern Time) on ~~April [   ],~~**May 16,** 2011, at the offices of proposed co-counsel to the Sellers, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038, or such later time or such other place as the Sellers shall designate and notify to all Qualified Bidders who have submitted Qualified Bids.  Only a Stalking Horse Bidder and each other Qualified Bidder who has submitted a Qualified Bid will be eligible to participate at the Auction.  Professionals ~~for~~**and principals or members of** (a) the **Sellers, (b) the** Committee, (~~b~~**c**) the Stalking Horse Bidder, (~~c~~**d**) Wilmington Trust, (~~d~~**e**) Law Debenture, (~~e~~**f**) Whippoorwill and (~~f~~**g**) each other Qualified Bidder, along with any other parties the Sellers deem appropriate, shall be able to attend and observe the Auction.

Each Qualified Bidder participating in the Auction will be required to confirm, in writing, that (a) it has not engaged in any collusion with respect to the Bidding Process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

At the Auction, participants will be permitted to increase their Qualified Bids.  ~~If~~**Bidding at the Auction will commence with** the ~~Stalking Horse Agreement represents the~~ Highest and Best Bid~~, the bidding will start at the aggregate consideration for the Acquired Assets and on the terms set forth in the Stalking Horse Agreement, plus the Initial Overbid.  If a Qualified Bid other than the Stalking Horse Agreement is selected as the Highest and Best Bid, then the bidding will start at the aggregate consideration for the Acquired Assets and on the terms proposed in such Highest and Best Bid plus $100,000 (the "Overbid Amount").  Bidding at the Auction will~~ **and will** continue in increments of at least ~~the Overbid Amount~~**$100,000** (each successive bid, an "<u>Overbid</u>"), which such increments may be made in the form of a Credit Bid.  An Overbid shall remain open and binding on the Qualified Bidder until and unless ~~(a)~~ the Sellers accept an alternate Qualified Bid as the Highest and Best Bid~~, and (b) such Overbid is not selected as the Back-Up Bid (as defined below)~~.  During the course of the Auction, the Sellers shall, after submission of each Overbid, promptly inform each participant which Overbid reflects, in the Sellers' view, the highest or otherwise best offer.

The Sellers may, in consultation with ~~any~~**the** Committee, announce at the Auction additional procedural rules (*e.g.*, the amount of time to make subsequent Overbids) for conducting the Auction so long as the rules are not inconsistent with these Bidding Procedures.  The bidding at the Auction shall be transcribed or videotaped and the Sellers shall maintain a transcript of all Bids made and announced at the Auction, including all Overbids and the Successful Bid.

Immediately prior to the conclusion of the Auction, the Sellers, in consultation with ~~any~~**the** Committee ~~appointed~~, will: (a) review each Qualified Bid made at the Auction on the basis of financial and contractual terms and such factors relevant to the Sale, including those factors affecting the speed and certainty of consummating the Sale; (b) identify the highest and best Bid for the Acquired Assets of the Seller at the Auction (the "<u>Successful Bid</u>"); and (c) notify all Qualified Bidders at the Auction, prior to its conclusion, of the name or names of the maker of the Successful Bid (the "<u>Successful Bidder</u>"), and the amount and other material terms of the

Successful Bid.  The Sellers shall not consider any Bids or Overbids submitted after the conclusion of the Auction and any and all such Bids and Overbids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

All bidders at the Auction will be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to jury trial in connection with any disputes relating to the Auction, the Sale and the construction and enforcement of the Stalking Horse Agreement.

## IX.   <u>Acceptance of Qualified Bids</u>

The Sellers may (a) determine, in their reasonable business judgment, in consultation with the Committee ~~(as applicable)~~, which Qualified Bid is the Successful Bid ~~and the next best Qualified Bid (the "Back-Up Bid")~~; and (b) reject at any time, before entry of an order of the Bankruptcy Court approving the Sale, any Bid (other than the Stalking Horse Agreement) that, in the Sellers' reasonable judgment, after consultation with the Committee ~~(as applicable)~~, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures or the terms and conditions of the Sale or (iii) contrary to the best interests of the Sellers and their estates.

The Sellers presently intend to convey the Acquired Assets to the Qualified Bidder that submits the Successful Bid, whether such entity is the Stalking Horse Bidder or another Qualified Bidder.  The Sellers' presentation to the Bankruptcy Court for approval of the selected Qualified Bid as the Successful Bid does not constitute the Sellers' acceptance of such Bid.  The Sellers will have accepted a Successful Bid only when such Successful Bid has been approved by the Bankruptcy Court at the Sale Hearing.  The Sellers and the Successful Bidder will close the Sale on or before ~~a date that is three (3) business days after the order approving the Sale becomes a final, non-appealable order, unless another time or date, or both, are agreed to in writing by the Sellers and the Stalking Horse Bidder (the "Closing Date").  If the Successful Bidder does not close the Sale by the Closing Date, then the Sellers will be authorized, but not required, to close with the party that submitted the Back-Up Bid (the "Back-Up Bidder"), without a further court order, and such Back-Up Bidder shall thereafter be deemed to be the Successful Bidder.  If the Sellers decide to close with the Back-Up Bidder as the Successful Bidder, the Closing Date will be extended by up to an additional fifteen (15) days; provided, that in no event shall the Closing Date occur later than forty-five (45) days after the filing by the Sellers of a voluntary petition for chapter 11 bankruptcy pursuant to the Bankruptcy Code.  Notwithstanding anything set forth herein, under no circumstances shall the Stalking Horse Bidder be selected as the Back-Up Bidder without its express written consent.~~  <u>**11:59 p.m. (prevailing Eastern Time) on May 23, 2011 (the "Closing Date").**</u>

## X.   **No Fees for Potential Bidders or Qualified Bidders, Other Than the Stalking Horse Bidder**

Potential Bidders or Qualified Bidders ~~, other than the Stalking Horse Bidder,~~ shall not be allowed any breakup, termination or similar fee or any expense reimbursement.  Moreover, all Potential Bidders and Qualified Bidders**, <u>other than the Stalking Horse Bidder,</u>** waive any right to seek a claim for substantial contribution.  ~~Notwithstanding the foregoing, the Stalking Horse Bidder and Whippoorwill will be entitled to reimbursement by the Sellers for the reasonable and~~

~~documented out-of-pocket fees, costs and expenses (including legal and other professionals' fees and expenses), incurred by the Stalking Horse Bidder and Whippoorwill in connection with the Stalking Horse Agreement and the Sale process in an amount not to exceed $800,000 (the "Expense Reimbursement"). The Expense Reimbursement will be paid to the Stalking Horse Bidder if (i) the Sellers enter into an Alternate Transaction (as defined in the Stalking Horse Agreement) or (ii) the Stalking Horse Bidder terminates the Stalking Horse Agreement pursuant to sections 3.4(h), 3.4(i) or 3.4(j) therein, and will be paid no later than (a) the closing date of the Alternate Transaction or (b) ten (10) days following the termination of the Stalking Horse Agreement pursuant to the foregoing clause (ii). The Stalking Horse Bidder shall not be entitled to the Expense Reimbursement for costs and expenses incurred after the Sellers select a Successful Bidder or Back-Up Bidder that is not the Stalking Horse Bidder.~~

## XI.    Return of Good Faith Deposit

The Good Faith Deposits of all Potential Bidders shall be held in escrow by the Sellers, but shall not become property of the Sellers' estates absent further order of the Bankruptcy Court. The Good Faith Deposits of all Potential Bidders (other than the ~~Successful~~**Stalking Horse** Bidder, which shall not be required to submit a Good Faith Deposit) shall be retained by the Sellers, notwithstanding Bankruptcy Court approval of a Sale, until three (3) business days after the earlier of (a) the Closing Date, or (b) twenty (20) days following the Sale Hearing. The Sellers shall retain indefinitely any Good Faith Deposit submitted by the Successful Bidder. At the closing of the Sale ~~contemplated by the Successful Bid~~, the Successful Bidder, other than the Stalking Horse Bidder, will be entitled to a credit for the amount of its Good Faith Deposit to the extent a Good Faith Deposit was provided. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon.

Document comparison by Workshare Professional on Tuesday, April 19, 2011 12:59:21 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://NYIWDMS/NY/73241352/14 |
| Description | #73241352v14<NY> - Ambassadors - Bidding Procedures |
| Document 2 ID | interwovenSite://NYIWDMS/NY/73241352/25 |
| Description | #73241352v25<NY> - Ambassadors - Bidding Procedures |
| Rendering set | Stroock Standard - strikethru, no #'s, no moves, no color |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 45 |
| Deletions | 55 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 1 |
| Total changes | 101 |

# **EXHIBIT 2**

## **Form of Auction Notice**

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

In re:

AMBASSADORS INTERNATIONAL, INC., et al.,<del>3</del>__4__

Debtors.

Chapter 11

Case No. 11-11002 (KG)

(Jointly Administered)

# NOTICE OF (I) SALE AND SOLICITATION OF BIDS TO ACQUIRE CERTAIN OF THE DEBTORS' ASSETS; (II) TERMS AND CONDITIONS OF BIDDING PROCEDURES AND; (III) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.  Ambassadors International, Inc., Ambassadors Cruise Group, LLC, Ambassadors, LLC, EN Boat LLC, AQ Boat, LLC, MQ Boat, LLC, DQ Boat, LLC, QW Boat Company LLC, Contessa Boat<del>,</del>__,__ LLC, CQ Boat, LLC and American West Steamboat Company LLC (the "Sellers") have entered into an Asset Purchase Agreement, dated as of <del>May</del>__April__ [____], 2011, (the "Stalking Horse Agreement"), by and among the Sellers and <del>a newly created</del> designee of Whippoorwill Associates, Inc. ("Whippoorwill"), to be created prior to consummation of the Sale (defined below) (the "Stalking Horse Bidder") to sell (the "Sale") substantially all of the assets of the Sellers <del>relating to the Sellers' businesses</del> (the "Acquired Assets"), including (i) accounts receivable; (ii) intellectual property (including, patents, copyrights, trademarks and

<del>3  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Ambassadors International, Inc. (8605); Ambassadors Cruise Group, LLC (2448); Ambassadors, LLC (0860); EN Boat LLC (8982); AQ Boat, LLC (5018); MQ Boat, LLC (5095); DQ Boat, LLC (5064); QW Boat Company LLC (0658); Contessa Boat, LLC (9452); CQ Boat, LLC (9511); American West Steamboat Company LLC (0656); and Ambassadors International Cruise Group (USA), LLC (7304). The mailing address for each Debtor is 2101 4th Avenue, Suite 210, Seattle, WA 98121.</del>

__4  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Ambassadors International, Inc. (8605); Ambassadors Cruise Group, LLC (2448); Ambassadors, LLC (0860); EN Boat LLC (8982); AQ Boat, LLC (5018); MQ Boat, LLC (5095); DQ Boat, LLC (5064); QW Boat Company LLC (0658); Contessa Boat, LLC (9452); CQ Boat, LLC (9511); American West Steamboat Company LLC (0656); and Ambassadors International Cruise Group (USA), LLC (7304). The mailing address for each Debtor is 2101 4th Avenue, Suite 210, Seattle, WA 98121.__

proprietary information); (iii) certain executory contracts (including executory agreements and licenses) and leased real property interests (collectively, the "Assigned Contracts") that are to be assumed by the Sellers and assigned to the Stalking Horse Bidder; (iv) documents, permits, licenses, and all books and records of the Sellers in whatever form and wherever located; and (v) all rights, claims and causes of action against third parties pertaining to the Acquired Assets, including any and all claims and causes of action arising under, or available pursuant to, the Bankruptcy Code[45] and all assets of the Sellers used or necessary to provide services in connection therewith. The purchase price (the "Purchase Price") for the Acquired Assets ~~shall~~**is estimated to** be approximately Forty Million Dollars ($40,000,000), in a form payable as (i) the payment in full in cash and/or assumption by the Stalking Horse Bidder of the obligations of the Sellers under the Prepetition Working Capital Facility and the DIP Facility (each as defined in the Stalking Horse Agreement) (the "Assumed Credit Agreement Obligations"); ~~and~~ (ii) a credit bid and release (the "Credit Bid") of the ~~Sellers'~~ obligations **of the Sellers and their subsidiaries** under the 10% senior secured notes due 2010 issued by Ambassadors International, Inc. (the "Senior Secured Notes"), in an **aggregate principal** amount ~~equal to the in an amount~~**of** not less than nineteen million dollars ($19,000,000)~~;~~**;** and (iii) assumption of the other Assumed Liabilities (as set forth in the Stalking Horse Agreement). The Sellers are inviting bids on the Acquired Assets. The Bankruptcy Court has entered an order (the "Bidding Procedures Order") approving auction and

---

[45] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures.

sale procedures (the "<u>Bidding Procedures</u>", which are attached as <u>Exhibit 1</u> to the Bidding Procedures Order) for the Acquired Assets.[~~5~~**6**]

2.       The Debtors propose to: (i) sell the Acquired Assets free and clear of all liens, claims or encumbrances thereon (except for Permitted Encumbrances, as defined in the Stalking Horse Agreement); and (ii) assume and assign the Assigned Contracts as described in the Stalking Horse Agreement.  You may obtain a copy of the Stalking Horse Agreement for free by (i) sending a written request to the Sellers' claims and noticing agent, Phase Eleven Consultants, LLC, at 11 S. LaSalle Street, 7th Floor, Chicago, Illinois 60603, (ii) calling the Sellers' co-counsel, Stroock & Stroock & Lavan LLP, at 212-806-~~5400,~~**5400 (Attn: Michael Magzamen),** or (iii) emailing ambassadors@stroock.com. On ~~April [    ],~~**or before May 3,** 2011, the Sellers ~~filed~~**will file** a schedule of cure obligations (the "<u>Cure Schedule</u>") for all potential Assigned Contracts ~~[Docket No.       ]~~.  The Cure Schedule ~~includes~~**will include** a description of each of the Sellers' contracts and leases potentially to be assumed and assigned under the Stalking Horse Agreement and the amount, if any, the Sellers believe is necessary to cure such agreements pursuant to section 365 of the Bankruptcy Code (the "<u>Cure Costs</u>").  A copy of the Cure Schedule, together with the Assumption and Assignment Notice, ~~was~~**will be** served on each of the ~~nondebtor~~**non-Debtor** parties listed on the Cure Schedule by first class mail on ~~April [    ],~~**or before May 3,** 2011.

3.       The Bankruptcy Court has scheduled an auction of the Acquired Assets (the "<u>Auction</u>") for **May ~~[    ],~~16,** 2011 ~~@~~**at** 10:00 a.m. (prevailing Eastern Time) at the offices of co-counsel for the Sellers, Stroock & Stroock & Lavan, LLP, 180 Maiden Lane, New York, New York 10038.  All interested parties are invited to submit a Qualifying Bid (as such term is defined in the Bidding Procedures) to acquire the Acquired Assets.

---

[~~5~~**6**] A copy of the Bidding Procedures is attached hereto as <u>Exhibit 1</u>.  A copy of the Bidding Procedures Order can be obtained for free by calling the Sellers' co-counsel, Stroock & Stroock & Lavan LLP, at 212-806-5400 **(Attn:**

4. A hearing to approve the sale of the Acquired Assets to the Stalking Horse Bidder, or a Successful Bidder other than the Stalking Horse Bidder (the "Sale Hearing"), is scheduled to be conducted on **May [——],18, 2011 [_:_]at 10:00 a.m./p.m.] (prevailing Eastern Time)**, in the United States Bankruptcy Court for the District of Delaware, Wilmington, Delaware, or as soon thereafter as counsel may be heard.

5. Any party seeking to (i) object to the validity of the Cure Costs as determined by the Sellers or otherwise assert that any other amounts, defaults, conditions or pecuniary losses must be cured or satisfied under any of the Assigned Contracts in order for such contract or lease to be assumed and assigned; or (ii) object to the assumption and assignment of any Assigned Contracts on any other basis (including, but not limited to, objections to adequate assurance of future performance by the Successful Bidder), must file a written objection (an "Assumption and Assignment Objection") with the Bankruptcy Court setting forth the cure amount the objector asserts to be due, and the specific types and dates of the alleged defaults, pecuniary losses and conditions to assignment and the support ~~therefore~~**therefor**, so that such objection is filed no later than **4:00 p.m. (prevailing Eastern Time) on May [——],13, 2011** (the "Assumption and Assignment Objection Deadline"), and such objection shall also be served so the same is actually received on or before the Assumption and Assignment Objection Deadline by (i) co-counsel to the Sellers, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038-4982, Attn: Kristopher M. Hansen, Fax: (212) 806-6006, E-mail: khansen@stroock.com; (ii) co-counsel to the Sellers, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Daniel J. DeFranceschi, Fax: (302) 498-7816, E-mail: defranceschi@rlf.com; (iii) financial advisor to the Sellers, Imperial Capital, LLC, 2000 Avenue of the Stars, 9th Floor, South Tower, Los Angeles,

California 90067, Attn: Chris Shepard, Fax: (310) 777-3052, Email: cshepard@imperialcapital.com; (iv) **proposed co-**counsel for ~~any~~**the** official committee of unsecured creditors appointed in these ~~cases; (v~~**Chapter 11 Cases (the "Committee"), Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068, Attn: John K. Sherwood, Fax: (973) 597-2539, E-mail: jsherwood@lowenstein.com; (v) proposed co-counsel for the Committee, Bifferato Gentilotti LLC, 800 North King Street, Plaza Level, Wilmington, Delaware 19801, Attn: Garvan F. McDaniel, Fax: (302) 429-8600, E-mail: gmcdaniel@bglawde.com; (vi) proposed financial advisor to the Committee, Macquarie Capital (USA) Inc., 125 W. 55th Street, New York, New York 10019, Attn: Ed Albert, Fax: (212) 231-1717, E-mail: ed.albert@macquarie.com; (vii**) counsel to Whippoorwill, Gibson Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166, Attn: Matt Williams, Fax: (212) 351-5232, Email: mjwilliams@gibsondunn.com; and (~~a~~**viii**) counsel to the Stalking Horse Bidder~~; or (b) counsel for the Successful Bidder, as applicable~~ (collectively, the ~~"~~**"**Notice Parties"").

6.     Objections to approval of the Sale, including the sale of the Acquired Assets free and clear of liens, claims, encumbrances, and interests (other than Permitted Encumbrances), must be in writing, state the basis of such objection with specificity and be filed with ~~this~~**the Bankruptcy** Court and served so as to be received by the Notice Parties on or before ~~May [    ], 2011 at 4~~**12**:00 p.m. **(noon)** (prevailing Eastern Time)~~.~~ **on May 17, 2011.**

7.	The Sale Hearing (at which the Court will consider approval of the proposed Sale) may be adjourned, from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment in open court or on the Court's calendar.

Dated:	Wilmington, Delaware
	April __, 2011

Respectfully submitted,

RICHARDS, LAYTON & FINGER, P.A.

_____
Daniel J. DeFranceschi (No. 2732)
L. Katherine Good (No. 5101)
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

STROOCK & STROOCK & LAVAN LLP
Kristopher M. Hansen
Sayan Bhattacharyya
Marianne Mortimer
Matthew G. Garofalo
180 Maiden Lane
New York, New York 10038-4982
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

Proposed Counsel to the Debtors
and Debtors-in-Possession

# EXHIBIT 3

**Form of Assumption and Assignment Notice**

| In re: | Chapter 11 |
|---|---|
| AMBASSADORS INTERNATIONAL, INC., et al.,[67] | Case No. 11-11002 (KG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF (I) CERTAIN DEBTORS' INTENT TO ASSUME AND ASSIGN
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES
RELATED TO THEIR BUSINESSES AND (II) CURE COSTS**

      **PLEASE TAKE NOTICE** that, Ambassadors International, Inc., Ambassadors Cruise Group, LLC, Ambassadors, LLC, EN Boat LLC, AQ Boat, LLC, MQ Boat, LLC, DQ Boat, LLC, QW Boat Company LLC, Contessa Boat~~,~~ LLC, CQ Boat, LLC and American West Steamboat Company LLC (collectively, the "Sellers") have requested that the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), approve an order (the "Bidding Procedures Order") authorizing the Debtors to conduct an auction to sell (the "Sale") ~~certain~~**substantially all of the** assets **of the Sellers** (the "Acquired Assets") to the highest and best qualified bidder (the "Successful Bidder"). A hearing (the "Sale Hearing") will be scheduled by the Bankruptcy Court to consider (i) the sale of the Acquired Assets to the Successful Bidder free and clear of liens, claims and encumbrances (except for certain assumed liabilities and permitted encumbrances as more particularly detailed in the Asset Purchase Agreement between the Sellers and a ~~newly created~~ designee of Whippoorwill Associates, Inc. ("Whippoorwill"), to be created prior to consummation of the Sale (defined below) (the "Stalking Horse Bidder"), and, (ii) the assumption and assignment of certain of the Sellers' executory contracts and unexpired leases in connection with the Sale. At the Sale Hearing, the Sellers will ask that the Bankruptcy Court enter an order (the "Sale Order") approving the Sale.

      **PLEASE TAKE FURTHER NOTICE** that, pursuant to the proposed Sale Order, the Sellers may assume and assign to the Successful Bidder those executory contracts and unexpired leases listed on **Schedule A** attached hereto (collectively, the "Assigned Contracts"), pursuant to section 365 of title 11 of the United States Code (the "Bankruptcy Code"). For the

---

[6] ~~The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Ambassadors International, Inc. (8605); Ambassadors Cruise Group, LLC (2448); Ambassadors, LLC (0860); EN Boat LLC (8982); AQ Boat, LLC (5018); MQ Boat, LLC (5095); DQ Boat, LLC (5064); QW Boat Company LLC (0658); Contessa Boat, LLC (9452); CQ Boat, LLC (9511); American West Steamboat Company LLC (0656); and Ambassadors International Cruise Group (USA), LLC (7304). The mailing address for each Debtor is 2101 4th Avenue, Suite 210, Seattle, WA 98121.~~

[7] **The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Ambassadors International, Inc. (8605); Ambassadors Cruise Group, LLC (2448); Ambassadors, LLC (0860); EN Boat LLC (8982); AQ Boat, LLC (5018); MQ Boat, LLC (5095); DQ Boat, LLC (5064); QW Boat Company LLC (0658); Contessa Boat, LLC (9452); CQ Boat, LLC (9511); American West Steamboat Company LLC (0656); and Ambassadors International Cruise Group (USA), LLC (7304). The mailing address for each Debtor is 2101 4th Avenue, Suite 210, Seattle, WA 98121.**

purposes of this paragraph, the "Successful Bidder" shall be read to potentially include Potential Bidders (as defined in the Bidding Procedures Order).

PLEASE TAKE FURTHER NOTICE that the Sellers have indicated on **Schedule A** attached hereto (the "Cure Schedule") the cure amounts that the Sellers believe must be paid to cure all prepetition defaults under the Assigned Contracts as of ~~April [__], 2001~~**May 3, 2011** (in each instance, the "Cure Costs").

PLEASE TAKE FURTHER NOTICE that any party seeking to (i) object to the validity of the Cure Costs as determined by the Sellers or otherwise assert that any other amounts, defaults, conditions or pecuniary losses must be cured or satisfied under any of the Assigned Contracts in order for such executory contract or lease to be assumed and assigned or (ii) object to the assumption and assignment of any Assigned Contracts on any other basis (including, but not limited to, objections to adequate assurance of future performance by the Successful Bidder), must file a written objection (an "Assumption and Assignment Objection") with the Bankruptcy Court setting forth the cure amount the objector asserts to be due, and the specific types and dates of the alleged defaults, pecuniary losses and conditions to assignment and the support ~~therefore~~**therefor**, so that such objection is filed no later than **4:00 p.m. (prevailing Eastern Time) on May ~~[__],~~13, 2011** (the "Assumption and Assignment Objection Deadline"), and such objection shall also be served so the same is actually received on or before the Assumption and Assignment Objection Deadline by (i) co-counsel to the Sellers, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038-4982, Attn: Kristopher M. Hansen, Fax: (212) 806-6006, E-mail: khansen@stroock.com; (ii) co-counsel to the Sellers, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Daniel J. DeFranceschi, Fax: (302) 498-7816, E-mail: defranceschi@rlf.com; (iii) financial advisor to the Sellers, Imperial Capital, LLC, 2000 Avenue of the Stars, 9th Floor, South Tower, Los Angeles, California 90067, Attn: Chris Shepard, Fax: (310) 777-3052, Email: cshepard@imperialcapital.com; (iv) **proposed co-**counsel for ~~any~~**the** official committee of unsecured creditors appointed in these ~~cases; (v~~**Chapter 11 Cases (the "Committee"), Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068, Attn: John K. Sherwood, Fax: (973) 597-2539, E-mail: jsherwood@lowenstein.com; (v) proposed co-counsel for the Committee, Bifferato Gentilotti LLC, 800 North King Street, Plaza Level, Wilmington, Delaware 19801, Attn: Garvan F. McDaniel, Fax: (302) 429-8600, E-mail: gmcdaniel@bglawde.com;**
**(vi) proposed financial advisor to the Committee, Macquarie Capital (USA) Inc., 125 W. 55th Street, New York, New York 10019, Attn: Ed Albert, Fax: (212) 231-1717, E-mail: ed.albert@macquarie.com; (vii**) counsel to Whippoorwill, Gibson Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166, Attn: Matt Williams, Fax: (212) 351-5232, Email: mjwilliams@gibsondunn.com; and (~~a~~**viii**) counsel to the Stalking Horse Bidder~~; or (b) counsel to the Successful Bidder, as applicable~~ (collectively, the "Notice Parties"); provided, however, that in the event the Auction results in a Successful Bidder other than the Stalking Horse Bidder (as defined in the Bidding Procedures Order), the Debtors shall file a notice identifying such Successful Bidder with the Court and serve such notice upon each party identified in the Cure Schedule, and the deadline for objecting to the assignment of the Assigned Contract to such Successful Bidder on the basis of adequate assurance of future performance shall be the commencement of the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that unless an Assumption and Assignment Objection is filed and served before the Assumption and Assignment Objection Deadline, all parties shall (i) be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to the Assigned Contracts, and the Sellers and the Successful Bidder shall be entitled to rely solely upon the Cure Costs; (ii) be deemed to have consented to the assumption and assignment of the Assigned Contracts, and (iii) be forever barred and estopped from asserting or claiming against the Sellers or the Successful Bidder that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assigned Contracts or that there is any objection or defense to the assumption and assignment of such Assigned Contracts.

**PLEASE TAKE FURTHER NOTICE** that hearings with respect to the Assumption and Assignment Objections may be held (i) at the Sale Hearing, or (ii) on such other date as the Bankruptcy Court may designate upon motion by the Successful Bidder and the Sellers. Where a ~~nondebtor~~**non-Debtor** counterparty to an Assigned Contract files an objection asserting a cure amount higher than the proposed Cure Costs (the "Disputed Cure Costs"), then (i) to the extent that the parties are able to consensually resolve the Disputed Cure Costs prior to the Sale Hearing, the Sellers shall promptly provide the ~~official committee of unsecured creditors, if any,~~**Committee** and the Successful Bidder notice and opportunity to object to such proposed resolution or (ii) to the extent the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then the amount to be paid under section 365 of the Bankruptcy Code with respect to such Disputed Cure Costs will be determined at the Sale Hearing or at such other date and time as may be fixed by this Court.

**PLEASE TAKE FURTHER NOTICE** that if you agree with the Cure Costs indicated on **Schedule A** and otherwise do not object to the Sellers' assignment and assumption of your executory contract or unexpired lease, you need not take any further action.

**PLEASE TAKE FURTHER NOTICE** that the Sellers' decision to assume and assign the Assigned Contracts is subject to Bankruptcy Court approval and the consummation of the Sale of the Acquired Assets. Accordingly, the Sellers shall be deemed to have assumed and assigned each of the Assigned Contracts as of the date of, and effective only upon, the closing of the Sale of the Acquired Assets, and absent such closing, each of the Assigned Contracts shall neither be deemed assumed nor assigned and shall in all respects be subject to further administration under the Bankruptcy Code. Inclusion of any document on the list of Assigned Contracts shall not constitute or be deemed to be a determination or admission by the Sellers or the Successful Bidder that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, all rights with respect thereto being expressly reserved. For the purposes of this paragraph, "Successful Bidder" shall be read to potentially include Potential Bidders.

Dated: Wilmington, Delaware
~~April~~**May** __, 2011

Respectfully submitted,

RICHARDS, LAYTON & FINGER, P.A.

_____
Daniel J. DeFranceschi (No. 2732)
L. Katherine Good (No. 5101)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

STROOCK & STROOCK & LAVAN LLP
Kristopher M. Hansen
Sayan Bhattacharyya
Marianne Mortimer
Matthew G. Garofalo
180 Maiden Lane
New York, New York 10038-4982
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

Proposed Counsel to the Debtors
and Debtors-in-Possession

## __SCHEDULE A__

**List of Executory Contracts and Unexpired Leases
Potentially to Be Assumed and Assigned at Closing**

Document comparison by Workshare Professional on Tuesday, April 19, 2011 2:00:40 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://NYIWDMS/NY/73228992/14 |
| Description | #73228992v14<NY> - Ambassadors - Bidding Procedures Order (SSL DRAFT 3/27/11) |
| Document 2 ID | interwovenSite://NYIWDMS/NY/73228992/19 |
| Description | #73228992v19<NY> - Ambassadors - Bidding Procedures Order |
| Rendering set | Stroock Standard - strikethru, no #'s, no moves, no color |

| Legend: | |
|---|---|
| **<u>Insertion</u>** | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| <u>Moved to</u> | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 95 |
| Deletions | 105 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 200 |