# EXHIBIT 1

**Bidding Procedures**

# BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to a sale of certain assets (together, the "Acquired Assets") of Ambassadors International, Inc., Ambassadors Cruise Group, LLC, Ambassadors, LLC, EN Boat LLC, AQ Boat, LLC, MQ Boat, LLC, QW Boat Company LLC, Contessa Boat, LLC, American West Steamboat Company LLC, DQ Boat, LLC and CQ Boat LLC (collectively, the "Sellers", and together with Ambassadors International Cruise Group (USA), LLC, the "Debtors"). The Acquired Assets being acquired and the terms and conditions upon which the Sellers contemplate consummating a sale are further described in the form of the Asset Purchase Agreement (the "Stalking Horse Agreement") among the Sellers and a designee of Whippoorwill Associates, Inc. ("Whippoorwill") that will be formed prior to consummation of the Sale (as defined herein) (the "Stalking Horse Bidder"). Copies of the form Stalking Horse Agreement are available for free by (i) sending a written request to the Sellers' claims and noticing agent, Phase Eleven Consultants, LLC (the "Claims Agent"), at 11 S. LaSalle Street, 7th Floor, Chicago, Illinois 60603, (ii) calling the Sellers' proposed co-counsel, Stroock & Stroock & Lavan LLP, at 212-806-5400 (Attn: Michael Magzamen), or (iii) emailing Stroock & Stroock & Lavan LLP at ambassadors@stroock.com. The sale of the Acquired Assets of the Sellers (the "Sale") pursuant to the Stalking Horse Agreement is subject to competitive bidding as set forth herein and approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to sections 105, 363, 365 and 503 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the Bankruptcy Court.

## I. The Sale Hearing

At a hearing before the Bankruptcy Court (the "Sale Hearing"), the Sellers will seek entry of an order from the Bankruptcy Court approving and authorizing the Sale to the Successful Bidder (as defined below) on terms and conditions consistent with the Stalking Horse Agreement (as modified solely to the extent accepted by the Sellers) and in accordance with these Bidding Procedures.

## II. Participation Requirements

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process (as defined below), each person or entity must deliver (unless previously delivered) to the Sellers, on or before the Bid Deadline (as defined below), (i) an executed confidentiality agreement in form and substance satisfactory to the Sellers (the "Confidentiality Agreement") and (ii) a *bona fide*, non-binding letter of intent or expression of interest with respect to a purchase of the Acquired Assets (together with the Confidentiality Agreement, the "Participation Requirements"). Each person or entity that delivers the Participation Requirements to the Sellers on or before the Bid Deadline is hereinafter referred to as a "Potential Bidder."

After a Potential Bidder delivers the Participation Requirements to the Sellers, the Sellers shall deliver or make available (unless previously delivered or made available) to each Potential

Bidder certain designated information and financial data with respect to the Acquired Assets; *provided*, *however*, that the Sellers, in consultation with the official committee of unsecured creditors appointed in these cases on April 11, 2011 (the "Committee"), may decline to make such information available to a Potential Bidder if the Sellers believe that such Potential Bidder poses a competitive threat to the Sellers' businesses. The Sellers shall use commercially reasonable efforts to promptly provide, or identify and make available to the Stalking Horse Bidder, any information concerning Sellers, any of their subsidiaries, the Acquired Assets or the Sellers' businesses provided to any Potential Bidder which was not previously provided to the Stalking Horse Bidder.

### III. Determination by the Sellers

The Sellers, after consultation with the Committee, shall (a) coordinate the efforts of Potential Bidders in conducting their respective due diligence, (b) evaluate bids from Potential Bidders, (c) negotiate any bid made to acquire the Acquired Assets and (d) make such other determinations as are provided in these Bidding Procedures (collectively, the "Bidding Process"). Neither the Sellers nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Acquired Assets to any person who is not a Potential Bidder.

### IV. Due Diligence

Up to and including the date that is one day prior to the Auction, as defined herein (the "Diligence Period"), the Sellers shall afford any Potential Bidder such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Sellers, in their business judgment, determine to be reasonable and appropriate. The Sellers may designate a representative to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders. Each Potential Bidder shall be required to acknowledge that it has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to submitting its Bid.

### V. Bid Deadline

A Potential Bidder that desires to make a bid shall deliver copies of its bid by facsimile and/or email to (a) proposed co-counsel to the Sellers, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038-4982, Attn: Kristopher M. Hansen, Fax: (212) 806-6006, E-mail: khansen@stroock.com; (b) proposed co-counsel to the Sellers, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Daniel J. DeFranceschi, Fax: (302) 498-7816, E-mail: defranceschi@rlf.com; (c) proposed financial advisor to the Sellers, Imperial Capital, LLC, 2000 Avenue of the Stars, 9th Floor, South Tower, Los Angeles, California 90067, Attn: Chris Shepard, Fax: (310) 777-3052, Email: cshepard@imperialcapital.com; (d) proposed co-counsel for the Committee, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068, Attn: John K. Sherwood, Fax: (973) 597-2539, E-mail: jsherwood@lowenstein.com; (e) proposed co-counsel for the Committee, Bifferato Gentilotti LLC, 800 North King Street, Plaza Level, Wilmington, Delaware 19801, Attn: Garvan F. McDaniel, Fax: (302) 429-8600, E-mail: gmcdaniel@bglawde.com; and (f) proposed financial advisor to the Committee, Macquarie Capital (USA) Inc., 125 W. 55th

Street, New York, New York 10019, Attn: Ed Albert, Fax: (212) 231-1717, E-mail: ed.albert@macquarie.com; by no later than May 13, 2011 at 12:00 p.m. (noon) (prevailing Eastern Time) (the "Bid Deadline").

## VI. Bid Requirements

All bids (each hereinafter, a "Bid") must (a) be accompanied by a letter:

(i) Offering to acquire all or a specified portion of the Acquired Assets and expressly agreeing to assume all or a specified portion of the liabilities to be assumed in the Sale pursuant to the Stalking Horse Agreement;

(ii) Accompanied by a duly executed agreement attached to the letter, marked to show any proposed amendments and modifications to the Stalking Horse Agreement and its schedules and exhibits (the "Marked Agreement");

(iii) Specifying Bid terms that are substantially the same as or better (as determined in the Sellers' reasonable business judgment, in consultation with the Committee) than the terms of the Stalking Horse Agreement;

(iv) Agreeing that the Potential Bidder's offer is binding and irrevocable until the earlier of (i) the Closing Date (as defined herein), or (ii) twenty (20) days after the Sale Hearing;

(v) Providing that such Bid is not subject to any due diligence or financing contingency; and

(vi) Agreeing not to request or assert entitlement to any transaction or break-up fee, expense reimbursement or similar type of payment;

(b) be accompanied by adequate assurance information (the "Adequate Assurance Information"), including (i) information about the Potential Bidder's financial condition, such as federal tax returns for two years, a current financial statement, or bank account statements, (ii) information demonstrating (in the Sellers' reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed Sale, (iii) evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid, (iv) the identity and exact name of the Potential Bidder (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the Sale), and (v) such additional information regarding the Potential Bidder as the Potential Bidder may elect to include. By submitting a Bid, Potential Bidders agree that the Sellers may disseminate their Adequate Assurance Information to affected landlords or contract counterparties in the event that the Sellers determine such bid to be (a) a Qualified Bid (as defined below) and (b) a higher and better bid than the Stalking Horse Agreement.

Potential Bidders may make one or more credit bids of some or all of their claims to the

3

full extent permitted by section 363(k) of the Bankruptcy Code (a "Credit Bid"). For the avoidance of doubt, (a) Wilmington Trust FSB ("Wilmington Trust"), solely in its capacity as Indenture Trustee under the Senior Secured Notes[1] and (b) Law Debenture Trust Company of New York ("Law Debenture"), in its capacity as Agent under the Prepetition Working Capital Facility,[2] may submit a credit bid on behalf of the Stalking Horse Bidder for the ratable benefit of the holders of the Senior Secured Notes (the "Second Lien Noteholders") and on behalf of the lenders under the Prepetition Working Capital Facility (the "Prepetition Working Capital Facility Lenders"), respectively, to the fullest extent permitted by section 363(k) of the Bankruptcy Code.[3] For the avoidance of doubt, any Credit Bid submitted by Wilmington Trust, in its capacity as Indenture Trustee, shall be credited to the aggregate consideration offered by the Stalking Horse Bidder, pursuant to the Stalking Horse Agreement or in Overbids (as defined herein) offered by the Stalking Horse Bidder at the Auction, and Wilmington Trust shall not be considered to have submitted a Bid on its own behalf, or otherwise constitute a Potential Bidder, Qualified Bidder or Successful Bidder. A Bid must be accompanied by (a) a certified check or wire transfer, payable to the order of the Sellers, in the amount of $1,000,000, which funds will be deposited into an interest bearing escrow account to be identified and established by the Sellers (a "Good Faith Deposit") and (b) written evidence, documented to the Sellers' reasonable satisfaction, that demonstrates the Potential Bidder has available cash or a commitment for financing and such other evidence of ability to consummate the transaction as the Sellers may reasonably request, including proof that such funding commitments or other financing are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals (*provided*, that such commitments may have covenants and conditions reasonably acceptable to the Sellers).

The Sellers, in consultation with the Committee, will review each Bid received from a Potential Bidder to ensure that it meets the requirements set forth above. A Bid received from a Potential Bidder that meets the above requirements will be considered a "Qualified Bid" and each Potential Bidder that submits a Qualified Bid will be considered a "Qualified Bidder." For the avoidance of doubt, the Stalking Horse Agreement is a Qualified Bid and the Stalking Horse Bidder is a Qualified Bidder, for all purposes and requirements pursuant to the Bidding Procedures, notwithstanding the requirements that Potential Bidders must satisfy to be a Qualified Bidder. Upon determination that a Bid received from a Potential Bidder constitutes a Qualified Bid, the Sellers shall, within one (1) day, provide the Stalking Horse Bidder with a copy of the Qualified Bid.

---

[1] Reference is made to the 10% senior secured notes due 2012 issued by Ambassadors International, Inc. pursuant to that certain indenture dated as of November 13, 2009, as amended, modified, supplemented or restated from time to time in accordance with its terms.

[2] Reference is made to that certain Credit and Guaranty Agreement, dated as of March 23, 2010, by and among Ambassadors International, Inc. and its subsidiaries, the lenders from time to time party thereto, and Law Debenture, as Administrative Agent and Collateral Agent, as amended, modified, supplemented or restated from time to time in accordance with its terms.

[3] Any Credit Bid made by or on behalf of the Stalking Horse Bidder shall be subject to the Committee's right to challenge such Credit Bid on any grounds at or prior to the Sale Hearing.

A Qualified Bid will be valued by the Sellers, in consultation with the Committee, based upon any and all factors that the Sellers deem pertinent, including, among others, (a) the amount of the Qualified Bid, (b) the risks and timing associated with consummating a transaction with the Potential Bidder, (c) any excluded assets or executory contracts and leases, (d) any liabilities not assumed and (e) any other factors that the Sellers (in consultation with the Committee) may deem relevant to the Sale.

The Sellers, in their business judgment, and in consultation with the Committee, reserve the right to reject any Bid if such Bid:

(a) Is on terms that are more burdensome or conditional than the terms of the Stalking Horse Agreement;

(b) Requires any indemnification of the Potential Bidder in its Marked Agreement;

(c) Is not received by the Bid Deadline;

(d) Is subject to any contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the Acquired Assets (other than as may be included in the Stalking Horse Agreement); or

(e) Is not a Qualified Bid for any other reason as set forth above.

Any Bid rejected pursuant to this paragraph shall not be deemed to be a Qualified Bid. In the event that any Bid is so rejected, the Sellers shall cause such Potential Bidder to be refunded its Good Faith Deposit and all accumulated interest thereon within three (3) business days after the Bid Deadline. Notwithstanding anything set forth in these Bidding Procedures, in no event shall the Sellers determine that a Bid is a Qualified Bid unless each of the Bid requirements enumerated herein are satisfied.

## VII. Auction Participation

Unless otherwise ordered by the Bankruptcy Court for cause shown, only the Stalking Horse Bidder and each Qualified Bidder are eligible to participate at the Auction (as defined below). At least one (1) day prior to the Auction, each Qualified Bidder must inform the Sellers in writing whether it intends to participate in the Auction. The Sellers will promptly thereafter inform (in writing) each Qualified Bidder, who has expressed its intent to participate in the Auction, (a) of the identity of all other Qualified Bidders that may participate in the Auction (and shall provide copies of the Qualified Bids to the Stalking Horse Bidder and any other Qualified Bidder who requests a copy of the Qualified Bids); and (b) of the Qualified Bid which the Sellers (in consultation with the Committee) have deemed to be the highest and best Qualified Bid (the "Highest and Best Bid"). If the Sellers do not receive any Qualified Bids other than the Stalking Horse Agreement: (a) the Sellers will not hold an Auction; (b) the Stalking Horse Agreement will be the Successful Bid (as defined below) and (c) the Stalking Horse Bidder will be named the Successful Bidder.

5

## VIII. Auction

If at least one Qualified Bid other than the Stalking Horse Agreement is received by the Bid Deadline, the Sellers will conduct an auction (the "Auction"). The Auction shall take place at 10:00 a.m. (prevailing Eastern Time) on May 16, 2011, at the offices of proposed co-counsel to the Sellers, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038, or such later time or such other place as the Sellers shall designate and notify to all Qualified Bidders who have submitted Qualified Bids. Only a Stalking Horse Bidder and each other Qualified Bidder who has submitted a Qualified Bid will be eligible to participate at the Auction. Professionals and principals or members of (a) the Sellers, (b) the Committee, (c) the Stalking Horse Bidder, (d) Wilmington Trust, (e) Law Debenture, (f) Whippoorwill and (g) each other Qualified Bidder, along with any other parties the Sellers deem appropriate, shall be able to attend and observe the Auction.

Each Qualified Bidder participating in the Auction will be required to confirm, in writing, that (a) it has not engaged in any collusion with respect to the Bidding Process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

At the Auction, participants will be permitted to increase their Qualified Bids. Bidding at the Auction will commence with the Highest and Best Bid and will continue in increments of at least $100,000 (each successive bid, an "Overbid"), which such increments may be made in the form of a Credit Bid. An Overbid shall remain open and binding on the Qualified Bidder until and unless the Sellers accept an alternate Qualified Bid as the Highest and Best Bid. During the course of the Auction, the Sellers shall, after submission of each Overbid, promptly inform each participant which Overbid reflects, in the Sellers' view, the highest or otherwise best offer.

The Sellers may, in consultation with the Committee, announce at the Auction additional procedural rules (*e.g.*, the amount of time to make subsequent Overbids) for conducting the Auction so long as the rules are not inconsistent with these Bidding Procedures. The bidding at the Auction shall be transcribed or videotaped and the Sellers shall maintain a transcript of all Bids made and announced at the Auction, including all Overbids and the Successful Bid.

Immediately prior to the conclusion of the Auction, the Sellers, in consultation with the Committee, will: (a) review each Qualified Bid made at the Auction on the basis of financial and contractual terms and such factors relevant to the Sale, including those factors affecting the speed and certainty of consummating the Sale; (b) identify the highest and best Bid for the Acquired Assets of the Seller at the Auction (the "Successful Bid"); and (c) notify all Qualified Bidders at the Auction, prior to its conclusion, of the name or names of the maker of the Successful Bid (the "Successful Bidder"), and the amount and other material terms of the Successful Bid. The Sellers shall not consider any Bids or Overbids submitted after the conclusion of the Auction and any and all such Bids and Overbids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

All bidders at the Auction will be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to jury trial in connection with any disputes relating to the Auction, the Sale and the construction and enforcement of the Stalking Horse Agreement.

## IX. Acceptance of Qualified Bids

The Sellers may (a) determine, in their reasonable business judgment, in consultation with the Committee, which Qualified Bid is the Successful Bid; and (b) reject at any time, before entry of an order of the Bankruptcy Court approving the Sale, any Bid (other than the Stalking Horse Agreement) that, in the Sellers' reasonable judgment, after consultation with the Committee, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures or the terms and conditions of the Sale or (iii) contrary to the best interests of the Sellers and their estates.

The Sellers presently intend to convey the Acquired Assets to the Qualified Bidder that submits the Successful Bid, whether such entity is the Stalking Horse Bidder or another Qualified Bidder. The Sellers' presentation to the Bankruptcy Court for approval of the selected Qualified Bid as the Successful Bid does not constitute the Sellers' acceptance of such Bid. The Sellers will have accepted a Successful Bid only when such Successful Bid has been approved by the Bankruptcy Court at the Sale Hearing. The Sellers and the Successful Bidder will close the Sale on or before 11:59 p.m. (prevailing Eastern Time) on May 23, 2011 (the "Closing Date").

## X. No Fees for Potential Bidders or Qualified Bidders, Other Than the Stalking Horse Bidder

Potential Bidders or Qualified Bidders shall not be allowed any breakup, termination or similar fee or any expense reimbursement. Moreover, all Potential Bidders and Qualified Bidders, other than the Stalking Horse Bidder, waive any right to seek a claim for substantial contribution.

## XI. Return of Good Faith Deposit

The Good Faith Deposits of all Potential Bidders shall be held in escrow by the Sellers, but shall not become property of the Sellers' estates absent further order of the Bankruptcy Court. The Good Faith Deposits of all Potential Bidders (other than the Stalking Horse Bidder, which shall not be required to submit a Good Faith Deposit) shall be retained by the Sellers, notwithstanding Bankruptcy Court approval of a Sale, until three (3) business days after the earlier of (a) the Closing Date, or (b) twenty (20) days following the Sale Hearing. The Sellers shall retain indefinitely any Good Faith Deposit submitted by the Successful Bidder. At the closing of the Sale, the Successful Bidder, other than the Stalking Horse Bidder, will be entitled to a credit for the amount of its Good Faith Deposit to the extent a Good Faith Deposit was provided. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon.